B-W ACCEPTANCE CORP. *v.* NORMAN POLK, D/B/A
NORM'S FURNITURE CITY

5-4166                                    414 S. W. 2d 849

Opinion delivered April 24, 1967
[Rehearing denied May 29, 1967.]

*Barber, Henry Thurman, McCaskill & Amsler,* By *Guy Amsler Jr.* for appellant.

*Clint Huey,* for appellee.

LYLE BROWN, Justice. B-W Acceptance Corporation originated this suit in replevin against appellee Norman Polk, d/b/a Norm's Furniture City. Jury trial resulted in a verdict in favor of Norm's.

Norman Polk was a retail furniture and appliance dealer in Warren. The merchandise involved was purchased from two wholesale distributing companies, Douglass Distributing Company and Magnavox Company. Norm's had arranged with B-WAC to carry financing paper on items purchased from these companies. The distributors would transfer the title to Norm's purchases to B-WAC. In turn, Norm's would cause to be executed in its behalf a B-WAC WHOLESALE FLOOR PLAN. Each of the instruments was designated as "Trust Receipt" and one would be executed for each order. The original due date on each trust receipt was ninety days. Each month Norm's floor-planned merchandise would be checked by B-WAC's field representative. The representative would calculate the amount due B-WAC for items sold out of the trust, and Norm's would give him a check. If out of a particular trust list some items of listed merchandise still remained on the floor, then that particular trust receipt could be renewed for another ninety days. For the renewal a service charge was required. The renewal fee could be paid either by Norm's or by the distributor who indorsed that particular trust receipt.

The trust receipts are identical except for the listed appliances. They may be described generally as a type of title retaining instruments. Title is, of course, retained by B-WAC, and possession is given Norm's for the purpose of sale in the regular course of business. The provisions of the trust receipts pertinent to a decision in the case are as follows:

"I (we) may sell the merchandise at retail in the regular course of business, for not less than the respective release price listed below, however, upon any such sale I (we) shall forthwith account for and deliver the proceeds thereof to B-WAC (Entruster) or its assigns for application upon the debt with respect to merchandise so sold, and until such accounting and delivery, I (we) shall hold the entire proceeds in form as received in trust for B-WAC (Entruster), or its assigns, separate and apart from

our own funds. I (we) further agree to permit B-WAC (Entruster) or its duly accredited representatives to physically inspect and to see the model and serial number on such merchandise on the floor at all reasonable times during business hours."

A default in either of these or other obligations authorized B-WAC to collect the amount due or take possession of the merchandise.

B-WAC's claim in replevin was two-pronged. A violation of its right of inspection was claimed, along with alleged default in three trust receipts.

Appellant's Point 1 (a): *BWAC was denied its right to inspect the merchandise on the floor at all reasonable times during business hours.* Since we do not here try issues of fact, it would serve no useful purpose to summarize all the evidence. We simply examine the record to determine if there is substantial evidence to support the jury verdict.

Norman Polk had been in the furniture and appliance business in Warren since 1958. B-WAC and Norm's started their finance dealings in 1963. Arrangements were made for floor plan financing and for the financing of retail sales. Ordinarily, B-WAC's field representative stationed at El Dorado checked Norm's floor plan merchandise during the first half of each month. Then during the latter part of the month the representative would return to Warren and work any delinquent retail accounts. Friction arose between the parties in December 1964, and culminated in circumstances forming the basis of this Point 1 (a). The field representative on his December inspection calculated the amount due B-WAC. Norm's gave him a check in the proper amount and asked that it be held. The check was forthwith cashed. On the January inspection the same experience occurred. When the second check was cashed Norman Polk called the Little Rock office of B-WAC and complained. On the basis of that conversation and his evaluation, the branch

manager of B-WAC decided that Norm's floor plan should be checked and collection made twice monthly. This new arrangement, in the manager's opinion, would avoid requests for holding checks.

On January 25th the field representative returned to Norm's under instructions from the branch manager. The first discussion between the representative and Norman Polk was about some delinquent retail accounts. Norman Polk was under the impression that they could be charged against his retail reserve held by B-WAC. The two called the Little Rock office of B-WAC about the matter. The branch manager refused Norman Polk's request and then asked to talk with the field representative. After the latter conversation the field representative walked over to Norman Polk and said he was repossessing "all my floor plan."

All of Norm's trust receipts were that day mailed from Little Rock to the field representative, and he returned to the store with them the following day. (In the meantime, Magnovox's credit manager called long distance about its account.) B-WAC's representative requested a complete check of all the floor-plan merchandise. Anticipating a repossession, Norman Polk said he would first want to talk to his lawyer. He gave the representative his lawyer's name. That ended the conversation.

B-WAC's manager called Norm's attorney, who testified at the trial. The attorney had not studied the contract. It was his recollection that Norman Polk told him of an agreement on the part of B-WAC or its representative to check his inventory once each month. Assuming such agreement existed, Attorney Roberts advised B-WAC's manager that B-WAC should inspect upon the regular agreed dates. No further contact was made by B-WAC with Norman Polk, and suit was shortly filed.

The substance of the testimony we have recited was offered by appellee, Norman Polk. From this testimony,

buttressed by other circumstances in the record, the jury concluded that B-WAC had not been denied its right "to inspect at all reasonable times." This is a relative term. Does it mean daily, weekly, monthly, or any time which satisfies the desires of the inspector? The answer depends upon the peculiar circumstances of a particular *status quo*. The jury must have been impressed, as are we, that there was no impending threat of insolvency, fraud, unsecured indebtedness, or serious delinquency. The customary monthly inspection was made on January 6th and Norm's remitted for the billing.

Suffice it to say that the jury found B-WAC had not been denied the right to inspect at all reasonable times. Considering the burden of proof, the evidence, and the valued right of jurors to take into consideration their own observations and experiences, we cannot say as a matter of law that the jury erred.

Appellant's Point 1 (b) : *Trust Receipts 7, 12, and 13 had matured at the time this action was filed.* Trust Receipt, (Ex.) 7. It was executed February 6, 1964, due in ninety days. During that year two of the five listed items were sold and reittanmces were made to B-WAC's field representative. Each ninety days there was a renewal of the trust in the customary manner. The last renewal in 1964 advanced the due date to February 1, 1965. This lawsuit was filed February 2, 1965. (Subsequent "curtailment" or "service" charges have been made each three months, presumably by Douglas Distributing Company.) B-WAC accepted the renewal from Douglass, which distributor had a power of attorney from Norm's with respect to these trust receipts.

Trust Receipt, (Ex.) 12. The original maturity date was January 22, 1965, some nine days before the filing of this suit. A three-months renewal is indorsed on the receipt, showing "renewed to 4-22-65."

Trust Receipt, (Ex.) 13. The original maturity date was January 28, 1965, some five days before the filing of

this suit. Again, a three months renewal is indorsed on the trust receipt, showing "renewed to 4-28-65."

When B-WAC elected to indorse a renewal on a trust receipt in lieu of request to the distributor for payment of the note and charged the "renewal service charge" to the debtor. the jury could conclude there had been no default.

Appellant's Point 2: *The trial court erred in permitting the introduction of testimony relative to Norm's outstanding retail installment sales contracts financed by B-WAC.* We agree with appellant that if the only purpose of this testimony was to establish a motive for the filing of this suit, the evidence would be inadmissible. *Boynton Land & Lumber Company* v. *Dye,* 126 Ark. 513, 191 S. W. 13 (1910). However, it was admissible for other purposes. It could possibly shed some light on the important question of whether the last visit by B-WAC's representative to Norm's was in the course of a reasonable inspection of the floor-planned merchandise. This line of questioning was initiated by appellee's counsel on cross-examination and could well shed some light on the witnesses' credibility.

Appellant's Point 3. *It was error for the court to submit to the jury, as an element of damage to Norm's, the expenditure of an attorney's fee.* We have examined the previous holdings of our court in which the allowance of an attorney's fee has been upheld in the absence of statutory authority. This case does not fall within the framework of those cases. In fact, this court has held that an attorney's fee is not recoverable in a replevin case. *Jacobson* v. *Poindexter,* 42 Ark. 97 (1883).

Affirmed except as to the allowance of an attorney's fee.