Doug CONEY *v.* Ray STEWART

77-273                                    562 S.W. 2d 619

Opinion delivered March 20, 1978
(Division I)

*McArthur & Johnson,* for appellant.

*House, Holmes & Jewell,* for appellee.

GEORGE HOWARD, JR., Justice. The question for review is whether the trial court's finding that appellant had breached the implied warranty of proper design and installation of a septic tank system, in a new house sold to appellee, is supported by substantial evidence.

## THE FACTS

On July 11, 1973, appellee purchased a new house from appellant, a residential building contractor in the Little Rock area. The house, which is located at Mabelvale, Arkansas, was sold as a package deal, including all plumbing and a septic tank system, for a total purchase price of $24,349.00.

Appellee encountered his first problem with the septic tank system in August, 1973, and appellant immediately corrected the problem by replacing a crushed pipe embedded in the soil leading from the house to the septic tank. Appellee's second problem developed in October, 1973, when appellee discovered that waste would flow on the floors of the bathrooms when use was made of the commodes. The overflow of the commodes, as well as water "bubbl[ing] up in the back yard", during heavy rains, continued intermittently from October, 1973, to 1976. Appellant made a futile effort to correct the problems by, *inter alia,* constructing a "slush pit" acorss appellee's yard and as a consequence of constructing the "slush pit", appellee was prevented from cutting the "grass around it [the slush pit] and stunk real bad." During the non-use of appellee's bathroom facilities during this period, appellee and his family were required to use either the facilities of neighbors, relatives or public establishments.

As a further consequence of these problems, complaints were registered by appellee's neighbors with the Pulaski County Health Department. The Pulaski County Health Department advised appellee by written communication that his septic tank system was creating a health hazard in the community and that appellee had thirty days to take corrective action, otherwise, legal action would be instituted against appellee.

In an effort to remedy the problem, in order to provide for the personal comfort and convenience of his family and to avoid litigation with the Pulaski County Health Department, appellee consulted a soil engineer who concluded that the soil was not suitable for the system designed and installed by appellant. Pursuant to the engineer's recommendations and advice, appellee installed a jet aeration system[1] as a replacement of the septic tank system.

On August 17, 1976, appellee instituted an action against appellant for breach of implied warranty praying damages in the sum of $3,425.00.

---

[1] The jet aeration system has been characterized as a miniature sewage plant.

## HOLDING OF THE TRIAL COURT

The trial court held that the evidence established "an apparent defect in design from the time that the septic tank was being installed" and awarded the appellee a judgment in the sum of $3,234.00 for the installation of a replacement system.

## CONTENTION OF APPELLANT FOR REVERSAL

The trial court erred in awarding a judgment against appellant inasmuch as appellee failed to present sufficient evidence to establish a breach of the implied warranty of proper construction and sound workmanship.

## THE DECISION

Appellant's argument is essentially to the effect that the evidence "to establish a breach of the implied warranty of proper construction and sound workmanship" is not supported by the evidence. But we find from the record that the trial court's holding was to the effect "there was no defect in the material or workmanship, but it seems apparent to the Court there was an apparent defect in design from the time the spetic tank was being installed."

After reviewing the record, we are persuaded that the trial court's finding is supported by substantial evidence and, accordingly, the trial court's holding is affirmed.

It is settled law in Arkansas that the rule of caveat emptor is no longer applicable to the sale of new housing by a vendor-builder to the purchaser; and that there is an implied warranty that goes with the sale of new housing by such a vendor-builder that it is constructed in a good workmanlike manner and is fit for human habitation. *Wawak* v. *Stewart*, 247 Ark. 1093, 449 S.W. 2d 922 (1970). Indeed, the implied warranty extends to a septic tank and drain field system where, as here, the system is an integral part of the house; and the breakdown of the system is tied to the design and installation and, moreover, the system failed before a minimum life expectancy had been realized by appellee.

Appellant argues that the septic tank was installed in good faith with the approval of the Pulaski County Health Department and the Arkansas Department of Health, Division of Sanitation Services; and that appellee has failed to establish that the system was improperly installed or that its malfunction was due to any failure in the construction of the system in a workmanlike manner. Appellant's argument is neither convincing nor persuasive.

The evidence reflects that on July 3, 1973, appellant received the following communication from the Pulaski County Health Department relating to the septic tank system:

"Dear Sir:

This is to certify final inspection has been made on the septic tank facilities of above lot.

Installation has followed engineer's plot plan *but it is very wet and there is doubt in my mind if it will function properly.*

By direction of Gordon P. Oates, M.D., Health Officer."
(Emphasis added)

This information was not communicated to the appellee. However, appellant led appellee to believe that the house and the septic tank system was conducive for human habitation and that the system had been constructed in a workmanlike manner.

In addition, the evidence supports a finding that the final approval given by the State Department of Health, Division of Sanitation Services, for the installation of the tank system was based upon a percolation test[2] conducted in 1965 before the lot on which appellant constructed the house was graded

---

[2] A percolation test determines the type of soil involved and the suitability of the soil for the absorption of liquids in terms of minutes and from this data a recommendation can be made as to the size of the septic tank required for the proposed structure.

and leveled by appellant. Moreover, the lot in 1965 was vacant. Consequently, at the time the Arkansas Department of Health issued its final approval, the Department was unaware of the grading and leveling of the lot that had been done by appellant in preparation for installing the system.[3] Furthermore, the percolation test of 1965 was given tentative approval in connection with the proposed construction of a dwelling house entirely different from the one in question.

It must be emphasized that the buyer-appellee in negotiating the purchase of the house involved was not on an equal bargaining position with the vendor-builder; the buyer was compelled to rely upon the skill and knowledge of the builder regarding the service and performance to be realized from the septic tank system. The defects were not discoverable by inspection. A substantial part of the septic tank system was buried underground and appellee possessed no expertise in plumbing or the septic tank system. On the other hand, appellant bargained from a position of superior knowledge of the structure that he had designed and installed. A home buyer should be able to place confidence and reliance on the vendor-builder who sells a new house. Consequently, a buyer has every reason to believe that his new house is reasonably fit for habitation. Anything less would, indeed, be a manifestation of injustice which this Court cannot condone or sanction.

Affirmed.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and HICKMAN, JJ.

---

[3]Before appellant graded the lot in question, the lot sloped upwards from the street, or the front part of the lot, approfimately 4.9 feet to the back of the lot. Inasmuch as the flow from the plumbing in the house would have to flow downhill with gravity, appellant graded from one to one and one-half feet of soil from the back yard immediately behind the house and said grading extended approximately 50 feet from the house. Consequently, the grading excavated substantially all of the top soil conducive to excellent performance of the septic tank system, thus leaving a clay type soil unsuitable for percolation.