Fred O. WINGFIELD, Jr. and Martha WINGFIELD
*v.* Kenneth Gerald PAGE and Drenda Sue PAGE

82-198                                              644 S.W.2d 940

Supreme Court of Arkansas
Opinion delivered January 31, 1983

*Hall, Tucker & Lovell,* by: *O. Wendell Hall, Jr.,* for appellants.

*David E. Smith* of *Boswell & Smith,* for appellees.

ROBERT H. DUDLEY, Justice. Appellants Wingfield, house builders, constructed a house in a subdivision they were developing in Benton. In May, 1979, they executed a contract to sell the previously unoccupied house to the appellees Page for $52,600. The contract contained the following provision:

13. INSPECTION AND REPAIRS: Buyer certifies that Buyer has inspected the property and is not relying upon any warranties, representations or statements of Agent or Seller as to age or condition of improvements, other than those specified herein. 13A and 13B do not apply to new previously unoccupied dwellings.

A. _X_ Buyer accepts the property in its present condition, subject only to the following: New Warranty for 1 year on New House.

During the first year of occupancy the appellees experienced leaking faucets, cracks in the showers, a sweating glass door and water leaks which required restretching of the carpet. During that period appellants repaired the defects. In June, 1980, appellees discovered large cracks in the exterior walls and doors that would no longer close. They asked appellants to repair the house. By this time, slightly more than one year had passed from the date of the contract and appellants adopted the position that their liability for repairs was absolved by the quoted provision.

Appellees filed suit for rescission in chancery court and then amended the complaint to ask for damages in the amount of $20,000 as the result of the breach of express and implied warranties. The case was then transferred to circuit court where appellants contended that the quoted language was an express one-year warranty which excluded all implied warranties. During the trial the appellees were allowed to increase their prayer for damages to $40,000. The trial lasted two days and appellees introduced evidence by an expert in the field of soil mechanics and foundation engineering that the expansive nature of the soil underneath the house caused flexation of the foundation which literally broke the house. He testified that the condition of the house would continue to worsen as the appellants had used the wrong tye of foundation for the existing soils. In addition, he testified about the proper type of foundation for the soil involved; the availability of the appropriate literature to builders; and the cost of repairing the existing defects. After ten minutes of deliberation the jury returned a verdict for appellees in the amount of $35,579. The Court of Appeals

certified the case to this Court as it involves a legal principle of major importance. Rule 29 (4) (b). We affirm the judgment.

The potential remedies of a purchaser of residential property against a builder-vendor have undergone change in recent years. The remedies come within the common law doctrines of tort and contract and the statutory doctrine of strict liability. As a matter of public policy the rule of caveat emptor has been significantly diminished.

Within the purview of contract law the purchaser may seek damages for breach of express or implied warranties. The implied warranty does not rest upon an agreement in fact, as does the express warranty, but arises by operation of law and is intended to hold the builder-vendor to a path of fairness. Under certain conditions the purchaser may assert mistake, misrepresentation or fraud and deceit, repudiate the contract and seek rescission.

Under the law of torts the purchaser may state a cause of action for negligence or if the builder-vendor acts with actual knowledge and an intent to deceive, may file a tort suit for fraud and deceit. Misrepresentation may also be the basis of a tort action.

Finally a purchaser may seek relief under the statutory remedy of strict liability which imposes liability, as a matter of public policy, on the party best able to shoulder it. *See Defective Housing: Remedies Available to the First and Subsequent Purchasers*, 25 So. Dakota L. Rev. 333 (1980); *Breach of Warranty in the Sale of Real Property: Johnson* v. *Healy*, 41 Ohio St. L.J. 727 (1980).

In the case at bar the appellees did not seek to recover under the doctrine of strict liability. *See Blagg* v. *Fred Hunt Co., Inc.*, 272 Ark. 185, 612 S.W.2d 321 (1981). The case was submitted to the jury on the theories of tort and contract for negligence and breach of implied warranty. Appellants contend that the instruction on implied warranty was erroneously given. Thus, the first point of this case deals only with the contractual remedies for breach of warranty.

In *Wawak* v. *Stewart,* 247 Ark. 1093, 449 S.W.2d 922 (1970), an opinion frequently cited in comments and articles, this Court abandoned the doctrine of caveat emptor, because of stated policy considerations, and adopted the view that, by operation of law, a builder-vendor gives implied warranties of inhabitability, sound workmanship and proper construction. That decision was thought to have raised the question of whether proof of faulty workmanship or construction was required to support a recovery under the theory of breach of warranty of habitability. Woods, *The Personal Injury Action in Warranty — Has the Arkansas Strict Liability Statute Rendered It Obsolete,* 28 Ark.L.Rev. 335, 355 (1974). The question was answered when the concept of implied warranties in residential construction was extended by finding a breach of the warranty of habitability based upon faulty design. *Coney* v. *Stewart,* 263 Ark. 148, 562 S.W.2d 619 (1978). *See also, Contracts — Implied Warranties in Residential Construction Contracts,* 2 U.Ark. Little Rock L.J. 166 (1979). This Court in *Coney, supra,* emphasized our commitment to the concept of fairness based upon the policy reasons stated in *Wawak, supra,* and in *Blagg, supra,* we extended the implied warranty on latent defects to subsequent purchasers under some conditions.

In this case appellants contend that the language "New Warranty for one year on New House" created an exclusive express warranty which preempted any implied warranty on the foundation of the home. From that hypothesis they argue that the instruction on implied warranty was erroneous. As authority appellants cite *Carter* v. *Quick,* 263 Ark. 202, 563 S.W.2d 461 (1978). In that case we held that when a contract for residential construction contains an express warranty on a subject, that warranty is exclusive and there can be no implied warranty on that subject. *Id.* at 205-6. However, the case before us differs from *Carter* because here the quoted contractual provision makes no promise as to a standard of workmanship, construction or habitability. The provision does not purport to be a disclaimer of fitness for habitation. Even if we assume that the merger doctrine did not apply to the contract and warranty deed, we think it plain that the quoted provision did not exclude an implied warranty with respect to the

defect now in question, which lay beneath the house and could not have been discovered by even the most careful inspection. *See Wawak, supra.* Therefore, we have no hesitancy in affirming the trial court in instructing the jury on implied warranty.

In *Carter* v. *Quick, supra,* we held that one may not recover under an implied warranty against a builder-vendor of a new home where there is a contractual provision which expressly covers the standard of workmanship. We arrived at this conclusion through reliance on pre-Uniform Commercial Code cases. Under the Uniform Commercial Code, however, warranties are generally construed as consistent with each other unless such a construction is unreasonable. *See* Ark. Stat. Ann. § 85-2-317 (Add. 1961). We do not review *Carter* at this time since the exact issue is not before us, but recognize that at least one court has now analogized in a similar case to warranties of goods under the Uniform Commercial Code. *Johnson* v. *Healy,* 176 Conn. 97, 405 A.2d 54 (1978); *See also, Breach of Warranty in the Sale of Real Property: Johnson* v. *Healy,* 41 Ohio St. L.J. 727 (1980). Some states have held a vendor-builder liable under both express and implied warranties. *See: Defective Housing: Remedies Available to the First and Subsequent Purchasers,* 25 So. Dakota L.Rev. 333 (1980). The *Carter* concept of express warranty should be analyzed to see if it embodies all of the elements of a disclaimer. If it does, we note that one commentator advances the argument that a disclaimer of fitness for habitation in the sale of new construction is unconscionable and against public policy. Hashel, *The Case For An Implied Warranty of Quality in Sales of Real Property,* 53 Geo. L.J. 633, 654 (1965). One court has held: "The public policy of Illinois does not prohibit a waiver or disclaimer of an implied warranty of habitability if such renunciation is sufficiently specific to adequately apprise the buyer of what he is waiving." *Conyers* v. *Malloy,* 50 Ill.App.3d 17, 364 N.E.2d 986 (1977). Assuming the implied warranty of habitability could be properly disclaimed, issues of the disclaimer's conspicuousness, detail, and reasonableness would merit our consideration. This area of our common law troubles us and we will welcome the oppor-

tunity to reexamine it. However, the issue is not now before us.

Appellants' next point for reversal is that the trial court erred in allowing the appellees to increase the amount of their prayer for damages. We find no merit in the contention. The case was originally filed as a suit for rescission. It was then amended into a suit for damages with a prayer for $20,000. On the first day of trial the appellees moved to amend the amount of the prayer to $40,000. The appellants did not claim surprise nor did they ask for a continuance; they only objected to the amendment. The trial court deferred ruling on the motion until all of the testimony was heard in order to determine whether any new issues were injected into the case by the proposed amendment. The trial court stated that if no new issues were injected and "if I see that there has been no prejudice done to the defendant, I will grant a motion to conform your pleadings to the proof. If I feel there is some prejudice that's been done to the defendant, I will deny the motion." At the conclusion of the testimony the trial court authorized the amendment of the pleadings to conform to the proof.

The trial court is authorized to amend pleadings or to conform them to the facts proved. ARCP Rule 15. This rule vests broad discretion in the trial court to permit amendment to pleadings and the exercise of that discretion by the trial court will be sustained unless it is manifestly abused. *Steed* v. *Busby,* 268 Ark. 1, 593 S.W.2d 34 (1980). One seeking reversal on that ground must show the manifest abuse of discretion. *Steed, supra.* No such abuse has been shown to exist in this case.

Appellants contend that "the trial court erred in not granting appellant's request for a new trial because the jury verdict, reached in ten minutes, for the exact amount claimed by appellees, was clearly grossly excessive and the result of passion and prejudice." We find no merit in the argument.

The length of time of jury deliberation is not, of itself, a ground for a new trial. ARCP Rule 59 (a). Here, we have

considered it as one of the factors in evaluating whether excessive damages appear to have been given under the influence of passion or prejudice. ARCP Rule 59 (a) (4). Appellees' expert witness in the field of soil mechanics and foundation engineering testified that the cost of stabilizing the foundation and walls was $32,975 and their witness on the cost of interior repairs testified to $2,604 damage to the interior of the residence. These two figures total $35,579, the precise amount of the verdict. Thus, there is substantial evidence to support the verdict. We cannot say the jury verdict was motivated by passion or prejudice.

Affirmed.