JOHN CHEESEMAN TRUCKING, INC. and John
Hofstetter *v.* Johnny "Bo" DOUGAN, et al.

92-543                                    853 S.W.2d 278

Supreme Court of Arkansas
Opinion delivered May 17, 1993.

230

*Huckabay, Munson, Rowlett & Tilley, P.A.*, by: *Bruce Munson*, for appellants.

*Laser, Sharp, Mayes, Wilson, Bufford & Watts, P.A.*, by: *Jacob Sharp, Jr.* and *Brian Allen Brown*; and *P. H. Hardin*, for appellee Johnny "Bo" Duncan.

*Gammill Law Offices*, by: *Randall L. Gammill*, for appellee

Nancy Katherine Pinson.

*Jerry Kelly*, for appellee Elizabeth Kittler.

*Gary Eubanks & Assoc.*, by: *Darryl E. Baker* and *James Gerard Schulze*, for appellee Tammy Bullock.

*Wright, Lindsey & Jennings*, for appellees Ryder Truck Rental, Inc., David Newman, and Richard Pitrolo.

*Anderson & Kilpatrick*, for appellees Glen McClendon Trucking, Inc., and James Guy Smith.

TED H. SANDERS, Special Chief Justice. On June 8, 1988, at approximately 11:45 p.m., an accident occurred among eleven (11) vehicles eastbound on Interstate 40 near the 162 mile marker east of North Little Rock in Pulaski County, Arkansas. The accident occurred when the vehicles involved encountered an area of heavy smoke which covered the highway and completely obstructed vision. The two (2) lead vehicles, the first one being owned by John Cheeseman Trucking, Inc. and driven by John Hofstetter, and the second vehicle being owned by Mallinckrodt, Inc. and driven by Morgan Clay, a leased employee from Sunbelt Transportation, Inc., stopped on Interstate 40 because they were blinded by the smoke being blown across Interstate 40 from a burning field. As a result of the two vehicles blocking the Interstate, subsequent vehicles, which entered into the smoke, collided with the two stopped vehicles or other vehicles which stopped after colliding with them. Four deaths occurred in the accident.

This action was originally filed in the Pulaski County Circuit Court by Ryder Truck Rentals, Inc. and its two drivers, David Newman and Richard Pitrolo, against the Kroger Company and two farmers who had been burning wheat stubble from their fields adjacent to Interstate 40 on the afternoon preceding the accident. The Kroger Company impleaded all other persons and entities involved in the accident. In response, most parties cross-claimed against all other parties so that all claims arising out of the accident, with the exception of the Pinson claim which was pending in Lonoke County Circuit Court, were pending in this action.

The trial court bifurcated the trial of liability and damages.

At the conclusion of the trial of liability, the jury answered interrogatories, finding John Hofstetter and his employer, John Cheeseman Trucking, Inc. and Morgan Clay and his principals, Sunbelt Transportation, Inc. and Mallinckrodt, Inc., guilty of negligence, which was the proximate cause of damage to all other parties. The jury also apportioned 50% of the responsibility to John Hofstetter and his employer John Cheeseman Trucking, Inc., and 50% of the responsibility to Morgan Clay and his principals, Sunbelt Transportation, Inc. and Mallinckrodt, Inc. The judgment entered on the jury's verdict dismissed all claims against all parties except the appellants and dismissed from the action the prevailing defendants who had not asserted cross-claims for damages. An appeal was taken from the jury's determination of liability. *John Cheeseman Trucking, Inc.* v. *Dougan*, 305 Ark. 49, 805 S.W.2d 69 (1991). Thereafter, the separate defendants, Morgan Clay and his principals, Sunbelt Transportation, Inc. and Mallinckrodt, Inc., settled with the prevailing parties prior to the trial. John Hofstetter and his employer, John Cheeseman Trucking, Inc., stipulated to the amounts of money damages of each party, and consent judgments by each party were entered against them.

John Hofstetter and his employer, John Cheeseman Trucking, Inc., bring this appeal from the original jury verdict finding them liable for the multi-vehicle accident and apportioning 50% of the fault to them. The appellees/cross-appellants, The Kroger Company; Nancy Katherine Pinson, Administratrix of the Estate of Kenneth Ray Pinson, deceased; Glen McClendon Trucking, Inc.; James Guy Smith, Jr.; Jeanette Stocks, Administratrix of the Estate of J.W. Stocks, deceased; Inez Woodruff, Administratrix of the Estate of Bobby Woodruff, deceased; Jerry Odom; Brenda Brown, Administratrix of the Estate of Hollis Brown, deceased; Elizabeth Kittler; Tammy Bullock; David Newman; Richard Pitrolo; and Ryder Truck Rental, Inc. brought a cross-appeal against the defendant, Johnny "Bo" Dougan, should the judgment against them be reversed. The decision is affirmed.

The appellants rely on four (4) points for reversal. They contend: (1) The evidence is insufficient to support the judgment against these defendants, and the judgment is clearly contrary to the preponderance of the evidence. (2) The court erred in failing to give AMI 902 as proffered in three separate versions. (3) The

trial court erred in failing to grant a motion for mistrial based upon improper closing argument. (4) The judgment should be amended to delete the portion in which Tammy Bullock is granted judgment.

The appellees/cross-appellants rely on one (1) point for reversal. That point is: The jury's finding of no liability on the part of Johnny "Bo" Dougan was not supported by substantial evidence.

Appellants' contention that the evidence is insufficient to support the judgment against them and that the judgment is clearly contrary to the preponderance of the evidence is without merit. Appellants argue that John Hofstetter was not negligent because the Cheeseman tractor-trailer was entirely off the travelled portion of the Interstate and onto the shoulder and grassy median. At the instruction of the fire chief, the Cheeseman tractor-trailer was moved by Mr. Hofstetter further east and further into the median before any photographs were taken. The location of the Cheeseman truck was disputed at trial. Appellants cite John Hofstetter's testimony as to his truck's location and the photographs of the physical evidence at the scene in evidence that its vehicle was completely off the travelled portion of the Interstate. However, the Mallinckrodt truck entered the smoke in the right lane, and the Cheeseman truck was in the left lane. Morgan Clay, the driver of the Mallinckrodt truck, testified that when he first came to a stop, his front bumper was even with the rear of the Cheeseman truck and approximately one foot to its right. Since the Cheeseman truck had been moved, the jury was entitled to interpret the photographs in light of the testimony and totality of the circumstances presented during the trial. Evidence presented at the trial revealed that prior to entering the smoke, Mr. Hofstetter saw the fire north of the Interstate, alerting him to the possibility of smoke on the highway. Also, he heard a call over the citizen's band radio to stop because smoke was across the Interstate. Instead of stopping, he slowed to approximately twenty (20) miles per hour and continued. After some distance into the smoke, Mr. Hofstetter testified that he felt the left side of his tractor leave the highway. He stopped his vehicle and radioed for Morgan Clay, driver of the Mallinckrodt truck, to stop his vehicle. He also testified that he abandoned his truck and ran east to another truck which was in the westbound land of the

Interstate.

When a jury verdict is challenged, the court will affirm the verdict and judgment of the trial court if the verdict is supported by any substantial evidence, with the evidence and all reasonable inferences therefrom examined in the light most favorable to the appellee. *Schuster's Inc.* v. *Whitehead*, 291 Ark. 180, 181, 722 S.W.2d 863 (1987). A jury verdict will be disturbed only when fair-minded persons could not draw the conclusion reached by the jury. *Pine View Farms, Inc.* v. *A.O. Smith Harvestore, Inc.*, 298 Ark. 78, 89, 765 S.W.2d 924, 930 (1989). It would not have been unreasonable for the jury to conclude from the evidence that Mr. Hofstetter was negligent in the following ways: (1) Proceeding into the smoke despite a warning to stop. (2) Stopping without knowing for sure if his truck was completely off the travelled portion of the Interstate. (3) Informing Morgan Clay, the driver of the Mallinckrodt truck to stop. (4) Abandoning his truck and making no effort to halt or warn rearward traffic.

Substantial evidence is defined as "that which is of sufficient force and character that it will compel a conclusion one way or another. It must force or induce the mind to pass beyond suspicion or conjecture." *Wal-Mart Stores, Inc.* v. *Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991).

It is not the court's province to try (or retry) issues of fact. Instead this court examines the record to determine if there is substantial evidence to support the jury verdict. We have examined the record to determine if there is substantial evidence to support the jury verdict as we are required to do. *B-W Acceptance Corp.* v. *Polk*, 242 Ark. 422, 414 S.W.2d 849 (1967). Based on the evidence presented to the jury, we cannot say as a matter of law that the jury erred.

We conclude the foregoing evidence is substantial and, therefore, sufficient to support the conclusion and judgment of the jury. For as we have stated many times before, the question is not whether the evidence would have supported some other conclusion, but whether it supports the conclusion reached by the trier of fact. *Minerva Enterprises, Inc.* v. *Howlett*, 308 Ark. 291, 824 S.W.2d 377 (1992).

Appellants, John Hofstetter and John Cheeseman Trucking, Inc., assert that the trial court erred in failing to instruct the jury on AMI 902 regarding the superior right of the forward vehicle.

AMI 902 is as follows:

When two vehicles are traveling in the same direction, the vehicle in front has the superior right to the use of the highway [for the purpose of "leaving it to enter an intersection road" (or the other appropriate language)], and the driver behind must use ordinary care to operate his vehicle in recognition of this superior right. This does not relieve the driver of the forward vehicle of the duty to use ordinary care and to obey the rules of the road.

This instruction was offered in three forms. In the first form, there was inserted in the brackets the words "for the purpose of stopping to avoid vehicles ahead." In the second form, the words "for the purpose of avoiding danger ahead" were inserted in the brackets. In the third form, the words "for the purpose of stopping in an emergency situation" were inserted.

The trial court declined to give AMI 902 and instructed the jury pursuant to AMI 301, AMI 303, AMI 305 and AMI 614. Additionally, the court instructed the jury on the rules of the road as set forth in AMI 901:

When a driver sees danger ahead, or it is reasonably apparent if he is keeping a proper lookout, then he is required to use ordinary care to have his vehicle under such control as to be able to check its speed or stop it, if necessary, to avoid damage to himself or others.

We believe that the combination of instructions given by the trial court fully covered the situation present in this case.

The two lead vehicles, Cheeseman and Mallinckrodt, after having reduced the speed of their vehicles due to the warning they received, entered the smoke on the Interstate. Both vehicles stopped without actually seeing a forward vehicle ahead blocking the road. This case can be distinguished from *East Texas Motor Freight Lines, Inc. v. Freeman*, 289 Ark. 539, 546-48, 713 S.W.2d 456 (1986). In *East Texas Motor Freight*, the forward vehicle stopped in the highway because the driver

actually saw two vehicles stopped in the roadway in front of her, which blocked her path. The East Texas Motor Freight truck then struck the Freeman vehicle from the rear. In that case, AMI 902 was properly given because Mrs. Freeman had stopped to avoid colliding with the two vehicles which were blocking the travelled portion of the highway. In this case, no testimony from appellant, John Hofstetter, was given that he stopped to avoid vehicles ahead, that he followed vehicles into the smoke (and then stopped to avoid hitting them) nor that one or more vehicles followed him into the smoke. Therefore, the factual basis upon which to instruct the jury under AMI 902 is lacking in his case.

The appellants argue that the trial court erred in failing to grant a motion for mistrial based upon an improper closing argument by the attorney for Nancy Katherine Pinson. The closing is as follows:

> Of all the truckers that were out there on this evening, the two in front have the least amount of training, and I'm going to suggest that I don't think it right for trucking corporations to put employees out on the highway without training them, without extensively training them, we are talking about multimillion, multibillion dollar businesses.
>
> When I was in high school, the State of Arkansas sent a van around, some of y'all may have participated in it, it was part of the drivers' education program, and they had simulated driving in there and you would sit behind a steering wheel and they'd give you all kinds of conditions and you learned to drive that way. That's been 20 years. I don't know what the state-of-the-art simulations would be now, but it couldn't be that expensive to expose these professional drivers to snow, blinding snow, blinding dust-storms, blinding rain, yes, smoke on the road, it couldn't be that expensive, it ought to be done and this is the place to get it done. Juries make a lot of changes in society. They make a lot of laws, you may not realize that. If I was to suggest to you that we needed to make a change here, what do you think we could do? Maybe when you went back in the jury room and elect a foreman and you could have the foreman call John Cheeseman Trucking or Glen McClendon Trucking, call the president of the corporation and say,

"Hey, Mr. President, I think we need to have some training for these drivers." You couldn't even get him on the phone, you know that, you couldn't even talk to him. What if you tried to attend a board of directors meeting, they wouldn't let you people in the door. What if you sent them a letter, what if you got together back in the jury room and sent a letter to John Cheeseman Trucking, Inc. and to Mallinckrodt or Sunbelt or whoever it is out of the corporations that Morgan Clay works for, they wouldn't read it, but there is something that you can do, you can take the jury forms that the judge is going to give you and you can take them back to the courtroom and you can fill them out appropriately so that you can send a message to those two front trucking companies, "don't put your drivers out there risking lives of the public, without giving them some training," and we can avoid accidents like this.

No objection was made to these remarks by counsel for Nancy Katherine Pinson. After closing arguments, in a proceeding out of the hearing of the jury, attorneys for the appellants moved for a mistrial. The trial judge denied the motion. It is settled law that for a trial court to have committed reversible error, timely and accurate objections must have been made, so that the trial court was given the opportunity to correct such error. *Gustafson* v. *State*, 267 Ark. 830, 593 S.W.2d 187 (1980). Hence, by waiting until after closing arguments when they were out of the presence of the jury to make a motion for mistrial, Cheeseman's attorney did not give the trial court the opportunity to correct any error committed during the closing argument. By this action, Cheeseman waived the objection. *Butler Mfg. Co.* v. *Hughes*, 292 Ark. 198, 729 S.W.2d 142 (1987).

The final point of appeal for the appellants is that the judgment should be amended to delete the portion in which Tammy Bullock is granted judgment. Tammy Bullock, by her pleadings, asked for affirmative relief only against the Kroger Company, Jerry Odom, Johnny "Bo" Dougan and William J. Bevis, Jr. Arkansas Rules of Civil Procedure 15(6) permits the trial court to allow amendment of the pleading to conform to the proof. The trial court, in this case, permitted Tammy Bullock to amend her pleading to conform to the proof.

The trial court stated in the record:

> ". . . you correct me if I am wrong, at one point, we said it will be considered in the record that everybody sued everybody else, is that what we said, so, for the record, we don't want any deficiency to ever show up, on appeal, arising out of the lack of suing somebody."

In order to secure a reversal of a trial judge's ruling under Rule 15, the appellant must show that the trial court manifestly abused his discretion, *Wingfield* v. *Pays*, 278 Ark. 276, 644 S.W.2d 940 (1983). We find that the trial judge did not abuse his discretion in allowing Tammy Bullock to amend her pleading to conform to the proof.

Since the cross-appeal is conditional upon the reversal, we do not have to consider the cross-appeal because we have affirmed the judgment. The appellants raised in their reply brief a fifth point of appeal which will not be considered as it was not one of their original points of appeal.

Affirmed.

HOLT, C.J., GLAZE, and NEWBERN, JJ., not participating.

Special Justices ROBERT F. THOMPSON and HOYT THOMAS join.