The Honorable Randy Minton State Representative 880 Minton Road Ward, Arkansas 72176-8618
Dear Representative Minton:
This is in response to your request for an opinion on three questions concerning the application for a sewage disposal system permit. You have enclosed an "individual sewage application form" and a portion of the rules and regulations pertaining to sewage disposal systems. Your three questions are as follows:
 1. Does item #15 on the application form require the results of a percolation test to properly size the sewage disposal system according to the current rules and regulations (Act 402 of 1977) for the individual sewage disposal systems?
 2. Is [sic] other methods of sizing a sewage disposal system other than a percolation test approved in any valid regulation?
 3. If a percolation test is not conducted, would certification of item # 29 on the application form as having conducted the above tests in accordance with the latest requirements of the rules and regulations pertaining to individual sewage disposal systems be false?
RESPONSE
In my opinion, in response to your first question, the application form is not the controlling document as to whether a percolation test is required. The applicable rules and regulations are controlling in this regard. In many instances, the rules require a percolation test, but where an initial soil suitability test shows marginal or unsuitable soil, the rules do not appear to require a percolation test. In response to your second question, there are several requirements that must be met in approving a sewage disposal system permit. A percolation test is mentioned as a predominant consideration. Before such test is conducted, however, a "soil bore or pit" is also necessary. If this latter test shows unsuitability or marginality of the soil, a percolation test is not necessarily required. Depending on the soil, an "alternate" or "experimental" system, or a system utilizing "good management practices," may be considered, and approval of such systems is within the sole discretion of the Department of Health or its authorized agent. I cannot provide a definite answer to your third question without reference to an individual certification, the completed application form, and all attendant facts.
Question 1 — Does item #15 on the application form require the results ofa percolation test to properly size the sewage disposal system accordingto the current rules and regulations (Act 402 of 1977) for the individualsewage disposal system?
In my opinion the application form is not controlling in this regard. The "Application for Individual Sewage Disposal Permit" does contain a subsection (#15), to record the results of a percolation test.[1] The form itself is not "law," however. The "law" which either does or does not require a percolation test is embodied in Act 402 of 1977 or the applicable rules and regulations promulgated by the Department of Health's "Division of Sanitarian Services."[2] See A.C.A. § 14-236-107 (Repl. 1998), and "Rules and Regulations Pertaining to Sewage Disposal Systems, Designated Representatives and Installers" ("Rules").
Act 402 of 1997, which is codified at A.C.A. §§ 14-236-101 to -118 (Repl. 1998), mentions percolation tests in only two places. The first is A.C.A. § 14-236-104(14) which authorizes "designated representatives" to make percolation tests. The second is A.C.A. § 14-236-118, which authorizes designated representatives to charge fees for percolation tests. The applicable rules, at Section 7.3(A) state, with regard to Part I of the application for a permit, that: "the information to be reported in this portion includes the results of the percolation test, soil determination results, lot dimensions, system design, system layout and other information. . . ." (Emphasis added.) The results of a percolation test are therefore ordinarily reported on the application form.
Rule 2.8, however, requires an initial "soil bore or pit" to determine the suitability of the soil. See also Rule 2.7 (stating that the first procedure in the design of a subsurface sewage absorption system is to determine the suitability of the soil). The regulations then state that: "[i]f the subsoil appears suitable, percolation tests should be made at points selected as typical of the area in which the disposal field will be located, and at the depth of the proposed soil absorption system. These percolation tests are used to determine the size and design of the proposed soil absorption system." (Emphasis added.) If the soil is "marginal," it is possible to approve a septic system thereon if with the addition of modifications or good management practices it is still capable of absorbing and renovating septic tank effluent. Rule 2.7(B). Approval of these systems is on a case-by-case basis, and is at the sole discretion of the Department or its authorized agent. Id. See also Rule 2.6. "Good management practices" are defined as "additions or modifications to standard septic tank systems which will make such systems more efficient, or which could make such systems acceptable in marginal soil conditions. . . . Where good management practices are proposed for inclusion in a septic tank system which might otherwise be unacceptable due to marginal soil conditions . . . approval of the proposed septic tank system shall be at the sole discretion of the Department or its authorized agent." Rule 2.6. If the soil is "unsuitable," the rules state that the soils "are not suitable for the use of conventional septic systems. Individual isolated lots may be capable of utilizing an experimental or alternate type sewage system. These are considered on a case-by-case basis under design criteria periodically updated by the Department." Rule 2.7(C).
If the soil bore or pit shows marginal soil or unsuitability of the soil, Rule 2.8 can be read as dispensing with the necessity of a percolation test. That is, the Rules indicate that there is no need to conduct a percolation test if the first soil bore or pit test readily shows marginality or unsuitability of the soil. If the soil is marginal, a system employing good management practices may be considered. If the soil is unsuitable, an alternate or experimental system may be an option.
In many instances, therefore, a percolation test will be required. There appears to be an exception, however, where a soil bore or pit shows marginal soil or unsuitability of the soil, and an "alternate," "experimental," or system employing "good management practices" is proposed. See also Op. Att'y Gen. 92-061 at 5-6 (recognizing the initial requirement of a soil suitability test and the availability of a system employing "good management practices" in marginal soils). These types of systems are approved at the "sole discretion" of the Department.[3]
Question 2 — Is [sic] other methods of sizing a sewage disposal systemother than a percolation test approved in any valid regulation?
The only other test mentioned in the applicable rules is the "soil bore or pit" test which is used to determine the suitability of the soil. Rule 2.8. The "minimum depth of the determination is to a depth of four (4) feet below the bottom of the proposed soil absorption system." The minimum information to be obtained includes the type and depth of the various soil layers, the depth to the seasonal ground water table, and depth to rock or strata that cannot be penetrated by conventional digging equipment. See also generally, Arkansas Pollution Control and EcologyCommission v. Coyne, 252 Ark. 792, 481 S.W.2d 322 (1972) (describing this test as an important requirement other than a percolation test). As noted above, this test is to be performed first, before any percolation test. No other tests are mentioned in the rules and regulations.
Question 3 — If a percolation test is not conducted, would certificationof item #29[4] on the application form as having conducted the abovetests in accordance with the latest requirements of the rules andregulations pertaining to individual sewage disposal systems be false?
I cannot answer this question in the abstract, without reference to all the pertinent facts surrounding a particular application and certification. If for example, the portion of the form detailing the results of the percolation test is left blank and other facts or remarks on the form show that compliance was had with applicable rules, the certification may not be false. This will depend entirely on the facts, however.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh
[1] A "percolation test" "determines the type of soil involved and the suitability of the soil for the absorption of liquids in terms of minutes and from this data a recommendation can be made as to the size of the septic tank required for the proposed structure." Coney v. Stewart,263 Ark. 148, 562 S.W.2d 619 (1978). The test essentially involves preparing a hole in the ground, filling it with a level of water and measuring the absorption rate over a period of time. Rule 2.9.
[2] This Division is sometimes also referred to as the "Division of Environmental Health Protection." See, e.g., Act 217 of 1999 (changing the references to this Division in another title of the Arkansas Code.)
[3] It should be noted in this regard that A.C.A. § 14-236-107(b)(3) authorizes the Division to "include in rules and regulations adopted pursuant to this chapter, definitions and detailed descriptions of good management practices and procedures which, when utilized in the construction of septic systems, will . . . [r]equire utilization of one (1) or more specific management practices or procedures as a condition of approval of standard septic systems where, in the opinion of the authorized agent, unusual site conditions or problems require the additional management practices or procedures to ensure the proper operation of an otherwise standard septic system." The applicable rules also provide that: "When a proposed modification is proven effective the Department will amend these Rules and Regulations to adopt the modification as a "good management practice." Rule 2.5. There are, however, no detailed descriptions or adopted modifications constituting good management practices in the Rules.
[4] I assume the proper reference is to item "19" on the application form.