J. Ted BLAGG and Kathye BLAGG, His Wife *v.*
FRED HUNT COMPANY, INC.

80-288                                    612 S.W. 2d 321

Supreme Court of Arkansas
Opinion delivered March 16, 1981

*Robert B. Wellenberger*, for appellants.

*Southern & Jones*, by: *Theodore Holder*, for appellee and cross-appellant.

ROBERT H. DUDLEY, Justice. The appellee, Fred Hunt Company, Inc., a house builder, bought a lot in the Pleasant Valley Addition to Little Rock, built a house on it, and sold it to the Dentons on October 9, 1978. The Dentons sold the house to the American Foundation Life Insurance Company, which on June 29, 1979, sold the house to appellants, J. Ted Blagg and Kathye Blagg. This purchase by appellants was made a few days less than 9 months after the date of the original sale. The appellants filed a two-count complaint alleging that after they purchased the home a strong odor and fumes from formaldehyde became apparent. They traced this defect to the carpet and pad which was installed by appellee. A motion to dismiss was filed by the appellee and the trial court granted the motion on count one of the complaint, the implied warranty count, on the basis of lack of privity. The court denied the motion on count two, which is framed in terms of strict liability.

When considering a motion to dismiss a complaint pursuant to Arkansas Rules of Civil Procedure, Rule 12 (b) (6), on the ground that it fails to state a claim on which relief can be granted, the facts alleged in the complaint are treated as true and are viewed in the light most favorable to the party seeking relief.

Count one of the complaint is based upon an implied warranty. The trial judge dismissed this count because the appellants are not in privity with the appellee. This court, in *Wawak* v. *Stewart*, 247 Ark. 1093, 449 S.W. 2d 922 (1970), abandoned the doctrine of caveat emptor and took the view that a builder-vendor impliedly warranted the home to the first purchaser. The issue of first impression in this case is whether the liability of the builder-vendor should be extended to a second or third purchaser.

Since *Wawak*, the original homebuyer has been able to place reliance on the builder-vendor's implied warranty. This has protected that investment which, in most instances, represents the family's largest single expenditure.

We find no reason that those same basic concepts should not be extended to subsequent purchasers of real

estate. This is an area of the law being developed on a case by case basis. Our ruling is based on the complaint before us and involves a home which had a defect that became apparent to the third purchasers, the appellants, within 9 months of the original sale date. Obviously, there is a point in time beyond which the implied warranty will expire and that time should be based on a standard of reasonableness.

We hold that the builder-vendor's implied warranty of fitness for habitation runs not only in favor of the first owner, but extends to subsequent purchasers for a reasonable length of time where there is no substantial change or alteration in the condition of the building from the original sale. This implied warranty is limited to latent defects which are not discoverable by subsequent purchasers upon reasonable inspection and which become manifest only after the purchase. Wyoming adopted this rule in a well reasoned opinion. *Moxley* v. *Laramie Builders, Inc.*, 600 P. 2d 733 (Wyo. 1979).

Appellants next contend that even if the implied warranty extends to subsequent purchasers, we should affirm the trial court as there is an express warranty which is exclusive. We do not consider this argument as the complaint does not allege an express warranty, and the sufficiency of the complaint is all that is tested.

We hold that count one of the complaint should not have been dismissed.

Appellee, in its cross-appeal, contends that the trial judge committed error in not dismissing count two of the complaint, the claim for damages under strict liability. We affirm the trial judge's ruling.

Our strict liability statute, Ark. Stat. Ann. § 85-2-318.2 (Supp. 1979) is as follows:

> Liability of Supplier — Conditions. — A supplier of a product is subject to liability in damages for harm to a person or to property if:
> (a) the supplier is engaged in the business of

manufacturing, assembling, selling, leasing or otherwise distributing such product;

(b) the product was supplied by him in a defective condition which rendered it unreasonably dangerous; and

(c) the defective condition was a proximate cause of the harm to person or to property. [Acts 1973, No. 111, § 1, p. 331.]

This 1973 act broadens somewhat § 402 (A) of the Restatement, Second, Torts (1965).

Before this statute was adopted, this Court avoided adopting strict liability in tort. See *Ford Motor Company* v. *Reid*, 250 Ark. 176, 465 S.W. 2d 80 (1971); *Higgins* v. *General Motors Corporation*, 250 Ark. 551, 465 S.W. 2d 898 (1971); and *Gatlin* v. *Cooper Tire and Rubber Company*, 252 Ark. 839, 481 S.W. 2d 338 (1972). The case of *Mack Trucks of Arkansas, Inc.* v. *Jet Asphalt and Rock Company*, 246 Ark. 101, 437 S.W. 2d 459 (1969) deals with § 85-2-318.1 and was decided before § 85-2-318.2, the statute we are interpreting, was enacted. We have approved the doctrine of strict liability in accordance with the statute. *Cockman* v. *Welder's Supply Co.*, 265 Ark. 613, 580 S.W. 2d 455 (1979); *Harrell Motors, Inc. and Chrysler Motors Corp.* v. *Billy Flanery*, 272 Ark. 105, 612 S.W. 2d 727 (1981).

Our first issue is whether this strict liability statute encompasses count two of the complaint. It is an oversimplification, but correct, to state that the construction of the word "product" is determinative. To decide the proper construction we have examined the few cases in other jurisdictions and various treatises.

Judge Henry Woods in *The Personal Injury Action in Warranty — Has the Arkansas Strict Liability Statute Rendered it Obsolete?*, 28 Ark. L. R. 335 (1974), gives a most perceptive preview of the real issue. He notes that we must choose between the persuasive reasoning of two outstanding jurists — Chief Justice Traynor in *Seely* v. *White Motor Company*, 63 Cal. 2d 9, 403 P. 2d 145, 45 Cal. Rptr. 17 (1965), and Justice Francis in *Santor* v. *A & M Karagheusian, Inc.*, 44 N.J. 52, 207 A. 2d 305 (1965). If the Traynor view is

adopted, the implied warranty will be very much alive when a purchaser is suing for purely economic loss from a defective product. His view, as stated in *Seely*, supra, is that when economic losses result from commercial transactions, as here, the parties should be relegated to the law of sales:

> Although the rules governing warranties complicated resolution of the problems of personal injuries, there is no reason to conclude that they do not meet the "needs of commercial transactions." The law of warranty "grew as a branch of the law of commercial transactions and was primarily aimed at controlling the commercial aspects of these transactions." ...

> Although the rules of warranty frustrate a rational compensation for physical injury, they function well in a commercial setting.

Justice Francis, in *Santor*, supra, prophetically extended the doctrine in a case involving carpeting that developed a defect, a purely economic loss, not a personal injury. In applying the doctrine of strict liability for purely economic loss he said:

> The obligation of the manufacturer thus becomes what in justice it ought to be — an enterprise liability, and one which should not depend on the law of sales ...

Quoting further:

> As we have indicated, the strict liability in tort formulation of the nature of the manufacturer's burden to expected consumers of his product represents a sound solution to an ever-growing problem, and we accept it as applicable in this jurisdiction. And, although the doctrine has been applied principally in connection with personal injuries sustained by expected users from products which are dangerous when defective, we reiterate our agreement with *Randy Knitwear, Inc.* v. *American Cyanamid Company*, [11 N.Y. 2d 5, 226 N.Y.S. 2d 363, 181 N.E. 2d 399 (1962)] that the responsibility of the maker should be no different where damage to the article sold or to other property of the consumer is involved. And see *Morrow* v. *Caloric Appliance Corporation*, 372 S.W. 2d 41 (Mo. Sup. Ct.

1963). In this era of complex marketing practices and assembly line manufacturing conditions, restrictive notions of privity of contract between manufacturer and consumer must be put aside and the realistic view of strict tort liability adopted. As was done almost 50 years ago in *MacPherson* v. *Buick Motor Co.*, 217 N.Y. 382, 111 N.E. 1050, 1053, L.R.A. 1916F 696 (Ct. App. 1916), the source of liability must be put "where it ought to be." Its source must be put in the law. Prosser, Law of Torts, supra, at pp. 680, 681.

*Shipper* v. *Levitt and Sons, Inc.*, 44 N.J. 70, 207 A. 2d 314 (1965) was then handed down by the same New Jersey court with the following language:

> The law should be based on current concepts of what is right and just and the judiciary should be alert to the never-ending need for keeping its common law principles abreast of the times. Ancient distinctions which make no sense in today's society and tend to discredit the law should be readily rejected .... We consider that there are not meaningful distinctions between [the] mass production and sale of homes and the mass production and sale of automobiles and that the pertinent overriding policy considerations are the same. That being so, the warranty or strict liability principles ... should be carried over into the realty field.

The cases of *Berman* v. *Watergate West, Inc.*, 391 A. 2d 1351 (D.C. 1978) and *Kriegler* v. *Eichler Homes, Inc.*, 269 Cal. App. 2d 224, 74 Cal. Rptr. 749 (1969) allow recoveries from a builder-vendor on the basis of strict liability.

After lengthy consideration, we choose to adopt the view of Justice Francis. We find no valid reason for holding that strict liability should not apply to property damage in a house sold by a builder-vendor. Accordingly, in construing the Arkansas strict liability statute, we hold that the word "product" is as applicable to a house as to an automobile.

Reversed and remanded on direct appeal; affirmed on cross-appeal.