Eddie W. BANKSTON et ux *v.*
THE PULASKI COUNTY SCHOOL DISTRICT

83-243                              665 S.W.2d 859

Supreme Court of Arkansas
Opinion delivered March 5, 1984

*Patter & Brown,* for appellant.

*Henry J. Osterloh,* for appellee.

DARREL HICKMAN, Justice. The appellants bought a house from Charlene McKenzie in 1980 which they had been leasing from her with an option to purchase. The house was built by Pulaski County School District students as a vocational project. The building contract was entered into by Charlene McKenzie and the district in 1977. The house was completed in 1979. A fire damaged the house in 1980. The Bankstons sued Charlene McKenzie, the school district, and the school district's insurance company for fire damage and for defects in the sewer system. Pulaski County School District moved to dismiss because of its statutory immunity from tort liability, and the court granted the motion. See Ark. Stat. Ann. § 12-2901 (Repl. 1979). On appeal the Bankstons argue their cause of action was for breach of contract as well as for negligence, and the court was wrong in dismissing the district as a party. The insurance carrier for Pulaski County remained a party. See Ark. Stat. Ann. § 66-3240 (Repl. 1980).

We must decide if the complaint was essentially one for breach of contract or for tort or both. We find that it was based mainly in tort, and the trial court was essentially correct in that respect. However, we do find that the complaint did state a cause of action against Pulaski County School District for breach of implied warranty regarding the

defects in the sewer system. Therefore, we find the court was in error in dismissing the Pulaski County School District entirely from the suit and remand the matter for further proceedings.

While the complaint mentioned that there was a contract between Pulaski County and Charlene McKenzie to build the house, it alleged the district "failed to perform the services of constructing the residential building in accordance with the contract by their *negligent* and callous disregard of building practices, building codes, electrical codes, sanitary codes, and standard practices. . . ." (Italics supplied.) Thereafter, it recited specific failures to conform to codes and rules on sewer systems and electrical systems. The complaint goes on to say the house was a "product" and the appellants ask for . . . "recovery under the grounds of *strict liability*, as well as *negligent performance* of the contract and *breach of warranty by virtue of the negligent construction* of the sewage system and electrical system." (Italics supplied.)

The complaint prayed for $159,890 damages to personal and real property; $6,900 for interest; $20,000 for payment of Bankston's services in supervising reconstruction, and $150,000 punitive damages, costs and attorney's fees. The Bankstons paid $83,000 for the house. The concluding paragraph reads:

> That the written contract, express and implied warranties of fitness and habitability and merchantability, extend from the defendant, the Pulaski County Special School District, to and through Charlene Worden McKenzie, who likewise warranted, to the Plaintiffs. The negligent installation and the negligent correction of the faulty installation causes defendants to be jointly and severally liable therefor.

The complaint was obviously meant to be a tort action. Almost all the allegations are that Pulaski County School District or its agents were negligent or are assertions of various theories of recovery that sound in tort rather than contract.

The theories mentioned are "negligent performance of contract, breach of express and implied warranties, negligence and strict liability." There is no question that negligence and strict liability sound in tort. See W. Prosser, *Law of Torts* § 28 (4th Ed. 1971); Restatement (Second) of Torts § 402 (A). Breach of warranty has been termed a hybrid of tort and contract. Prosser, *supra* § 95.

On two occasions we have held breach of warranty actions to be tortious in nature. *Pennsalt Chemical Corp. v. Crown Cork & Seal Co., Inc.*, 244 Ark. 638, 426 S.W.2d 417 (1968); *Evans Laboratories v. Roberts*, 243 Ark. 987, 423 S.W.2d 271 (1968). When the legislature enacted our comparative fault statute, it included breach of warranty in its definition of "fault." Ark. Stat. Ann. § 27-1763 (Repl. 1979). There are a few occasions where failure to perform a contract is a tort. Those instances arise where the law recognizes an affirmative duty to act with care. One of these is where contractors misperform contracts. *Prosser, supra* § 92. That is essentially what the appellants allege. While nonfeasance of a contract usually sounds in contract, misfeasance is ordinarily a tort action. *McClellan v. Brown*, 276 Ark. 28, 632 S.W.2d 406 (1982).

Damages prayed for are a factor to consider in determining whether an action is in tort or contract. Punitive damages are ordinarily sought in tort actions, not contract. See *McClellan v. Brown, supra.* The difference between an action in contract and one in tort is not always exact, but we stated the basic distinction in *Atkins Pickle Co. v. Burrough-Uerling—Brasuell*, 275 Ark. 135, 628 S.W.2d 9 (1982); "The purpose of the law of contract is to see that promises are performed; the law of torts provides redress for various injuries." Owing to that distinction, the measure of damages in contract cases differs from that in tort cases. In tort cases the purpose of the law is to compensate the plaintiff for the injury inflicted even though it may have been unexpected, as in the aggravation of a pre-existing physical condition. AMI Civil 2d, 2203 (1974). But in contract cases the special damages must have been in contemplation of the parties when the agreement was made. We stated our rule in *Hawkins v. Delta Spindle of Bly-*

*theville,* 245 Ark. 830, 836, 434 S.W.2d 825 (1968);

> It requires not only that there must be knowledge on the part of the one to be charged at the time of the contract of the special circumstances out of which the damages arise, but also that the facts and circumstances be such as to make it reasonable to believe that he tacitly consented to be bound to more than ordinary damages in case of default on his part.

If, for example, a householder buys an electric switch to replace one in his home, and the new switch is defective and causes a fire, the merchant who sold it is not liable for the damage even though he knew what the switch was to be used for.

Here, the buyers were shopping for a bargain when they employed the school district to build their house. The contract required the appellants to pay only the actual cost of the materials plus a fee of $500, with no charge for the students' labor. The school district did not tacitly consent to take the risk of the fire that occurred, because homeowners customarily carry fire insurance to protect themselves against such a casualty. Consequently, the asserted cause of action for the fire loss is one in tort for negligence, not in contract for a breach of the agreement.

However, the complaint states a cause of action in contract for the district's alleged installation of a defective septic tank. The complaint does allege that the defect permitted sewage to leach into a third person's pond, but the prayer for damages is for the cost of correcting the defect. Thus the complaint states a proper cause of action for breach of contract, to which the school district must respond. The plaintiffs would not be barred from suing the school district simply because they did not have a contract with the school district, because a builder-vendor's implied warranty for fitness for habitation runs not only to the first owner but extends to subsequent purchasers for a reasonable length of time where there is no substantial change or alterations in the conditions of the building from the original sale. See *Blagg* v. *Fred Hunt Co.,* 272 Ark. 185, 612 S.W.2d 321 (1981).

Affirmed in part and reversed in part.