**ALASKAN OIL, INC., Appellee,**

v.

**CENTRAL FLYING SERVICE, INC., Appellant.**

No. 91–3662.

United States Court of Appeals, Eighth Circuit.

Submitted June 12, 1992.

Decided Sept. 21, 1992.

---

Charles Turner Coleman, Little Rock, Ark., argued (Clinton M. Smart, III, on the brief), for appellant.

W. Asa Hutchinson, Fort Smith, Ark., argued, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, HEANEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

## RICHARD S. ARNOLD, Chief Judge.

This case arises from the sale of a Beechcraft airplane owned by G.W. Davis Construction Company (Davis) to Alaskan Oil, Inc. Approximately one year after this sale, Alaskan Oil sold the plane for salvage after finding that it had deteriorated so much as to be "economically unfeasible" to repair. On December 19, 1989, Alaskan Oil sued Davis and Central Flying Service, Inc., the company which acted as the selling agent, seeking to recover the losses it sustained as a result of the plane's failing to perform as expected. The jury returned a verdict for Central Flying and Davis on breach-of-warranty and fraud claims, but found for Alaskan Oil on its strict-liability claim, awarding it $54,500.00. The District Court[1] upheld these findings, and Central Flying Service now appeals. We affirm.

### I.

In early 1987, Alaskan Oil hired Corporate Airways to help it find a used aircraft suitable for purchase. Corporate Airways' president, Dan Steinman, was assigned the task of finding this plane. Pursuant to his authority, Steinman entered into a contract for the purchase of a 1970 Beechcraft airplane which was owned by Davis. Central Flying Service, the company which had pos-session of the aircraft and to which Davis owed a substantial amount of money for repair work and storage, brokered the deal. The contract was completed on March 3, 1987.

In the year after the sale, Alaskan Oil experienced many problems with the plane. During this time, both engines were replaced, the fuel cell and de-icing boots were replaced, and large amounts of corrosion were discovered. In March of 1988, the plane was flown to Wichita, Kansas, for inspection. The inspection found that the plane was so corroded as to be "economically unfeasible" to repair. Alaskan Oil sold the aircraft for salvage and initiated this action against Davis and Central Flying Service.

At trial, both sides presented evidence relating to the condition of the aircraft before and after its sale. The jury found that Davis and Central Flying had not broken any warranties given to Alaskan Oil, nor committed any acts of fraud. The jury did find Davis and Central Flying liable to Alaskan Oil on a theory of strict liability and awarded it $54,500.00, apportioning 80 per cent of the liability to Central Flying.

On this appeal, Central Flying argues that a verdict for strict liability is improper when the only damages suffered were economic losses to the product sold. In addition, it argues that there was insufficient evidence to support the conclusion that the plane was in a defective condition and unreasonably dangerous when it was sold to Alaskan Oil. Finally, Central Flying argues that it was not a "supplier" as defined in §§ 4–86–102 and 16–116–102 of the Arkansas Code. Finding these arguments to be without merit, we affirm.

### II.

■ The majority of courts in the United States hold that a strict liability action cannot be successful if the only damages that occur are to the product itself. See, e.g., *East River Steamship Corp. v. Trans-*

---

1. The Hon. George Howard, Jr., United States District Judge for the Eastern and Western Dis-tricts of Arkansas.

*america Delaval, Inc.,* 476 U.S. 858, 866–71, 106 S.Ct. 2295, 2299–2302, 90 L.Ed.2d 865 (1986). The appellants, relying upon this theory, argue that Alaskan Oil may not recover in strict liability because, as Alaskan Oil concedes, the only damages that occurred were to the plane itself. They further argue that Arkansas law supports this position. We disagree.

We believe Arkansas law has endorsed the minority view allowing recovery in instances where the only damages are to the product itself. In *Blagg v. Fred Hunt Co., Inc.,* 272 Ark. 185, 189–190, 612 S.W.2d 321, 323–324 (1981), the Arkansas Supreme Court quoted extensively from the New Jersey Supreme Court's opinion in *Santor v. A & M Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305 (1965), the case which is widely acknowledged as the "progenitor" of the minority view. *East River Steamship Corp.,* 476 U.S. at 868–69, 106 S.Ct. at 2300–01. In a later opinion, the Arkansas Supreme Court acknowledged that the *Blagg* opinion indicated that Arkansas followed the minority view established in *Santor.* See *Berkeley Pump Co. v. Reed-Joseph Land Co.,* 279 Ark. 384, 391, 653 S.W.2d 128, 131 (1983). Given these two pronouncements, we hold that Arkansas law permits recovery under strict liability even when the only damages sustained are to the defective product itself.

■ In order to recover strict liability damages, Alaskan Oil must show that the plane was unreasonably dangerous. The appellants argue that there was insufficient evidence to support the jury's conclusion that the plane was in a defective condition and unreasonably dangerous when purchased. In support of this claim, they point to the fact that, among other things, the plane never crashed and that no one was injured as a result of its use. There is evidence, however, which supports the jury's finding that the plane was in a defective condition and unreasonably dangerous. Both sides presented evidence on the plane's history of corrosion problems, with the jury finding Alaskan Oil's more persuasive. This is a decision that the jury was entitled to make, and we will not disturb it.

■ Finally, Central Flying argues that it cannot be held responsible under Arkansas's strict-liability laws because it is not a "supplier" of the product as defined in the statute. Arkansas products liability law states that "a supplier of a product" is liable for damages if:

(1) The supplier is engaged in the business of manufacturing, assembling, selling, leasing or otherwise distributing the product;

(2) The product was supplied by him in a defective condition which rendered it unreasonably dangerous; and

(3) The defective condition was a proximate cause of the harm to person or to property.

Ark.Code.Ann. § 4–86–102(a) (1987). A "supplier" is defined as:

Any ... entity engaged in the business of selling a product, whether the sale is for resale, or for use or consumption. "Supplier" includes a retailer, wholesaler, or distributor and also includes a lessor or bailor engaged in the business of leasing or bailment of a product....

Ark.Code.Ann. § 16–116–102(3) (1987). Central Flying argues that it merely brokered the sale of this plane, which was owned by Davis, and that as such, it was not a supplier.

In ruling upon the appellants' motion for judgment notwithstanding the verdict, the District Court held that Central Flying was more than a mere agent in this transaction and that it could be found to be a supplier under the statute. We agree. The relationship between Davis and Central Flying was more than that of seller and agent. Indeed, Central Flying had a substantial interest in the sale of the plane because Davis had fallen substantially behind in its payments for maintenance and storage. The plane was sold for $65,000, of which Central received $53,000 to pay off the balance that Davis owed it. Central had an interest of its own. It acted not only for Davis, but also for its own account.

The judgment of the District Court is affirmed.