Howard W. CURRY and Linda Curry, *His Wife v.* William S. THORNSBERRY and Delores K. Thornsberry, *His Wife*

03-285                                                     128 S.W.3d 438

Supreme Court of Arkansas
Opinion delivered November 6, 2003

*Charles A. Brown, P.A.*, for appellants.

*Peel Law Firm, P.A.*, by: *Richard L. Peel* and *Jennifer L. Modersohn*, for appellees.

TOM GLAZE, Justice. Appellants Howard and Linda Curry petition for review from a court of appeals opinion affirming a directed verdict against them. The Currys purchased a home in the Lakehill Subdivision in Pope County in June of 1991. The house they bought had been built in 1987 by William Thornsberry and a partner, Lee Taylor. On March 17, 1995, the Currys filed suit against Thornsberry, alleging that Thornsberry had been negligent in the construction of the house. Particularly, the Currys asserted that the soil underlying the Lakehill Subdivision was composed of "Enders soil," a type of soil that shrinks and expands as moisture levels fluctuate. Further, the Currys alleged that Thornsberry concealed and failed to reveal and failed to inform and direct others to reveal the actual adverse soil components that made Lakehill Subdivision poorly suited for urban uses. The complaint further claimed that Thornsberry promoted the house as being properly constructed and fit for the purpose intended, and that the defects in the property were concealed from the buying public. The Currys alleged that Thornsberry breached the implied warranties of fitness, habitability, and merchantability by concealing the defects.

Thornsberry answered, generally denying the allegations of the complaint, and specifically averring that the three-year statute of limitations for negligence and the five-year statute of limitations for construction had expired prior to the filing of the complaint. Thornsberry further asserted that, prior to purchasing the house, the Currys "examined the property as fully as they desired and any alleged defects were present" and should have been revealed to the Currys through their inspection.

Following a trial on the complaint, Thornsberry moved for a directed verdict, arguing that the statute of limitations ran in 1992, and that there had been no acts of fraudulent concealment that would have tolled the statute. The trial court granted the motion, finding that the Currys did not prove Thornsberry had fraudulently concealed anything, so as to toll the statute of limita-

tions. From that directed verdict, the Currys bring this appeal, arguing that the trial court erred 1) in directing a verdict in favor of Thornsberry, and 2) in awarding attorney's fees.

In determining whether a directed verdict should have been granted, we review the evidence in the light most favorable to the party against whom the verdict is sought and give it its highest probative value, taking into account all reasonable inferences deducible from it. *Woodall v. Chuck Dory Auto Sales, Inc.*, 347 Ark. 260, 61 S.W.3d 835 (2001); *Lytle v. Wal-Mart Stores, Inc.*, 309 Ark. 139, 827 S.W.2d 652 (1992). A motion for directed verdict should be granted only if there is no substantial evidence to support a jury verdict. *Mankey v. Wal-Mart Stores, Inc.*, 314 Ark. 14, 858 S.W.2d 85 (1993). Stated another way, a motion for a directed verdict should be granted only when the evidence viewed is so insubstantial as to require the jury's verdict for the party to be set aside. *Fayetteville Diagnostic Clinic v. Turner, supra; Conagra, Inc. v. Strother*, 340 Ark. 672, 13 S.W.3d 150 (2000); *Wal-Mart Stores, Inc. v. Kelton*, 305 Ark. 173, 806 S.W.2d 373 (1991). Where the evidence is such that fair-minded persons might reach different conclusions, then a jury question is presented, and the directed verdict should be reversed. *Howard v. Hicks*, 304 Ark. 112, 800 S.W.2d 706 (1990). It is not this court's province to try issues of fact; we simply examine the record to determine if there is substantial evidence to support the jury verdict. *City of Caddo Valley v. George*, 340 Ark. 203, 9 S.W.3d 481 (2000).

For their first point on appeal, the Currys argue that the trial court erred in granting Thornsberry's motion for directed verdict at the close of the Currys' evidence. In granting the motion, the trial court found no evidence of fraudulent concealment that would have tolled the statute of limitations. That statute of limitations is found in Ark. Code Ann. § 16-56-112(a) (1987 & Supp. 2003), which provides as follows:

> No action in contract . . . to recover damages caused by any deficiency in the design, planning, supervision, or observation of construction or the construction and repair of any improvement to real property . . . shall be brought against any person performing or furnishing the design, planning, supervision, or observation of construction or the construction or repair of the improvement more than five (5) years after substantial completion of the improvement.

However, § 16-56-112(d) further states that "[t]he limitations prescribed by this section shall not apply in the event of fraudulent concealment of the deficiency[.]" In the present case, the residence was constructed in 1987, and the Currys' suit was not filed until 1995. Therefore, in the absence of fraudulent concealment of the alleged deficiencies in the construction of their home, their suit was barred as of 1992 by the statute of limitations found in § 16-56-112(a).

■■ This court has recognized that the effect of § 16-56-112(a) is to cut off entirely an injured person's right of action before it accrues, when that action does not arise until after the statutory period has elapsed. *Rogers v. Mallory*, 328 Ark. 116, 941 S.W.2d 421 (1997); *Okla Homer Smith Furniture Mfg. Co. v. Larson & Wear, Inc.*, 278 Ark. 467, 646 S.W.2d 969 (1983). Thus, § 16-56-112(a) is more accurately described as a "statute of repose," rather than a "statute of limitations." *Rogers*, 328 Ark. at 120. The *Rogers* court further noted that the General Assembly's purpose in enacting the statute was to "enact a comprehensive statute of limitations protecting persons engaged in the construction industry from being subject to litigation arising from work performed many years prior to the initiation of the lawsuit." *Rogers*, 328 Ark. at 120 (citing *Okla Homer Smith Furniture*, 278 Ark. at 470).

■■ When the running of the statute of limitations is raised as a defense, the defendant has the burden of affirmatively pleading this defense. *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998); *First Pyramid Life Ins. Co. v. Stoltz*, 311 Ark. 313, 843 S.W.2d 842 (1992). However, once it is clear from the face of the complaint that the action is barred by the applicable limitations period, the burden shifts to the plaintiff to prove by a preponderance of the evidence that the statute of limitations was in fact tolled. *Id.* Fraudulent concealment suspends the running of the statute of limitations, and the suspension remains in effect until the party having the cause of action discovers the fraud or should have discovered it by the exercise of due diligence. *Shelton v. Fiser*, 340 Ark. 89, 8 S.W.3d 557 (2000); *Martin v. Arthur*, 339 Ark. 149, 3 S.W.3d 684 (1999); *First Pyramid Life Ins. Co. v. Stoltz, supra.*

■ In order to toll the statute of limitations, this court has said that a plaintiff is required to show something more than a continuation of a prior nondisclosure; rather, there must be

evidence creating a fact question related to "some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself." *Shelton*, 340 Ark. at 96 (quoting *Adams v. Arthur, supra*); *see also Meadors v. Still*, 344 Ark. 307, 40 S.W.3d 294 (2001). Accordingly, it is clear that not only must there be fraud, but the fraud must be furtively planned and secretly executed so as to keep the fraud concealed. *Shelton, supra*. Further, if the plaintiff, by the exercise of reasonable diligence, might have detected the fraud, he is presumed to have had reasonable knowledge of it. *O'Mara v. Dykema*, 328 Ark. 310, 942 S.W.2d 854 (1997); *Wilson v. General Elec. Capital Auto Lease, Inc.*, 311 Ark. 84, 842 S.W.2d 619 (1992).

In *O'Mara, supra*, the issue was whether the seller of a house (Dykema) had misrepresented the condition of the house to the buyer (O'Mara). After living in the house for about three years, O'Mara noticed that some of the exterior walls were crumbling, and moisture was entering the house through the cracks. O'Mara sued Dykema, alleging misrepresentation, negligence, strict liability, and breach of warranties. Dykema answered and pleaded affirmatively that the statute of limitations had run on the negligence claim, as more than three years had elapsed since the home was constructed. *O'Mara*, 328 Ark. at 314. The trial court granted Dykema's motion for summary judgment. On appeal, this court affirmed, holding that O'Mara offered the trial court nothing to indicate that Dykema experienced problems with the dryvit itself or knew it was defective. Nor did O'Mara put forth any evidence of any affirmative acts of concealment by Dykema of any defective condition. Accordingly, the *O'Mara* court held that there was no genuine issue of material fact as to fraudulent concealment and held that the trial court properly granted summary judgment on Dykema's claim. *See id.* at 318.

Although this case comes before us on a motion for directed verdict, rather than a summary judgment, the issue is much the same. In the present case, the Currys argued that Thornsberry concealed the defects in the house by having them repaired. The Currys point to the testimony of William Hegeman, who worked on the lot where the Currys' home was built. Hegeman testified that when the house was constructed, the concrete footings were poured to eight inches thick, and that the footings were "feathered out" on the sides, rather than square. Hegeman also stated that he

was called back to the lot about two years later, at which time he saw cracks in the foundation; there were hairline cracks on the front of the house, but on the garage end, one could see an actual movement of one-quarter to one-half inch. At Thornsberry's direction, Hegeman fixed the cracks. He dug holes under the footing to get down to "something more solid," and he put down piers and caulked the cracks. He also said he "covered up, filled up, tuck pointed all the cracks with mortar but one hairline crack, but [he] didn't paint them."

The Currys also called as a witness Dr. Edward Grubbs, a specialist in soil and foundation engineering and geotechnical engineering. Dr. Grubbs testified that he first examined the Curry home in 1995, and discovered numerous problems. Dr. Grubbs stated that the concrete block under the house had leaned out and separated, and the bottom block was pushed out from the top block from one-half to three-quarters of an inch because the lateral pressure of the soil acting on the concrete blocks had caused the blocks to rotate. Dr. Grubbs stated that the ground under the house was very wet and muddy, and the Enders soil caused numerous foundation problems. Dr. Grubbs further testified that a soil survey, published in 1981, showed that the entire subdivision was built on Enders soil, and the survey proclaimed that such soil was poorly suited to most urban uses.

Thornsberry was also called to testify. He averred that he had been notified by the first purchaser of the house — a Mr. Harris — that there were some problems with the foundation. At that point, Thornsberry said, he and his partner, Lee Taylor, had Hegeman make repairs. Thornsberry conceded that he knew that there had been a defect in the foundation, but averred that he directed Hegeman not to paint over where he had re-pointed the cracks.

Howard Curry testified that when he first looked at the house, he noticed some hairline cracks along some mortar joints and some cracks in the sheetrock inside the house. However, Curry also stated that when he purchased the house from HUD (it was a foreclosure sale), he was aware that HUD did not warrant the condition of the house and would not repair it. When he bought the house, he said, he "did not see where anything was out of the ordinary." In 1994, Curry said, he had a conversation with Thornsberry; Thornsberry denied building the house, and said that he had no responsibility for any problems that existed with the house.

As the trial court correctly found, while the above testimony may have shown that the construction of the house was defective, none of it demonstrated that Thornsberry did anything to actively, furtively, and fraudulently conceal the defects that were present. Curry contends that the act of repairing the cracks in the foundation constituted fraudulent concealment. However, the cracks in the foundation and the repairs to those cracks were, by Curry's own testimony, apparent from the day he bought the house. Although the Currys offered some proof of the defective condition of the home, they simply offered no evidence that would indicate that Thornsberry engaged in some "positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that conceals itself." *O'Mara*, 328 Ark. at 317. Although affirmative acts of concealment of a cause of action will toll the statute of limitations, the Currys provided no proof that Thornsberry affirmatively concealed anything, and, as noted above, the Currys knew that the house had defects before they purchased it. In *Meadors v. Still, supra,* this court held that there has to be "some proof offered which created a fact question related to a positive act of fraud." *Meadors*, 344 Ark. at 316. No such proof was presented here; therefore, the trial court did not err in granting Thornsberry's motion for directed verdict.

The Currys' second argument on appeal is that the trial court erred in awarding attorney's fees to Thornsberry. After the trial court directed a verdict for Thornsberry, Thornsberry filed a motion seeking attorney's fees and costs, which the trial court granted. For their second point on appeal, the Currys argue that the trial court erred in awarding attorney's fees and costs to Thornsberry, asserting that Ark. Code Ann. § 16-22-308 (Repl. 1999) does not authorize the award of attorney's fees in an action for a breach of the implied warranty of habitability.

The relevant statute, § 16-22-308, provides that, "[i]n any civil action to recover on . . . [a] breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney fee to be assessed by the court and collected as costs." Thus, the issue before the court is whether the Currys' lawsuit, which alleged negligence as well as a breach of the

warranties of fitness, habitability, and merchantability, was one for which the prevailing party could recover attorney's fees under § 16-22-308.

The Currys insist that their lawsuit sounded in tort, as they raised claims of deceit and negligent construction. However, they also concede in their brief that their cause originated through an implied warranty of fitness. This court has held that there is an implied warranty of fitness and habitability in the sale of a new house by a seller who was also the builder. *See Wawak v. Stewart,* 247 Ark. 1093, 449 S.W.2d 922 (1970). In *Blagg v. Fred Hunt Co., Inc.,* 272 Ark. 185, 612 S.W.2d 321 (1981), the builder-vendor's implied warranty of fitness for habitation was extended to subsequent purchasers "for a reasonable length of time where there is no substantial change or alteration in the condition of the building from the original sale." *Blagg,* 272 Ark. at 187. The implied warranty was limited in *Blagg* to latent defects which are not discoverable by subsequent purchasers upon reasonable inspection and which become manifest only after the purchase. *Id.*

This court has noted that an action for breach of warranty has "been termed a hybrid of tort and contract." *Bankston v. Pulaski County School District,* 281 Ark. 476, 665 S.W.2d 859 (1984) (citing W. Prosser, *Law of Torts* § 28 (4th ed. 1971)). In *Rogers v. Mallory,* 328 Ark. 116, 941 S.W.2d 421 (1997), this court assumed, but did not decide, that such a breach-of-warranty claim was an action "in contract" under § 16-56-112(a).[1] In addition, in *Wingfield v. Page,* 278 Ark. 276, 279, 644 S.W.2d 940, 942 (1983), this court made the statement that, "*[w]ithin the purview of contract law* the purchaser may seek damages for breach of express or implied warranties." (Emphasis added.) In *Bankston, supra,* the court held that, where a plaintiff brought an action for breach of warranty, due to the improper construction and installation of a sewage system, that complaint "state[d] a cause of action in contract." *Bankston,* 281 Ark. at 480. The *Bankston* court further

---

[1] The issue in *Rogers* was whether there was fraudulent concealment that would have tolled the statute of limitations for bringing an action under § 16-56-112; the court in that case wrote that, "[a]ccording to § 16-56-112(a), an action in contract, and *there is no argument made here that the breach-of-warranty claim is not such an action,* must be brought no more than five years after substantial completion of the home." *Rogers,* 328 Ark. at 119-20 (emphasis added; internal quotation marks omitted).

pointed out that, in order to determine whether an action sounds in contract or tort, one may look to the nature of the damages prayed for. There, this court stated the following:

> The difference between an action in contract and one in tort is not always exact, but we stated the basic distinction in *Atkins Pickle Co. v. Burrough-Uerling-Brasuell*, 275 Ark. 135, 628 S.W.2d 9 (1982): "The purpose of the law of contract is to see that promises are performed; the law of torts provides redress for various injuries." Owing to that distinction, the measure of damages in contract cases differs from that in tort cases.

*Bankston*, 281 Ark. at 479. Where on the facts the action may sound either in contract or tort or in both, the court itself will often seek to determine the real character of the action. *L.L. Cole & Son, Inc. v. Hickman*, 282 Ark. 6, 665 S.W.2d 278 (1984). Here, the Currys sought damages to compensate them for repairs to the house, for the value of their services in repairing the interior of the house, for the cost of work done to fend off water from the house and foundation, for future repairs of the foundation and footing, and for loss of bargain and loss of enhancement and appreciation of the home's value. As in *Bankston*, the damages sought were for the costs of correcting the defects; therefore, the complaint stated a cause of action on the contract.

Other jurisdictions have concluded that an action on a breach of the implied warranty of habitability is an action on a contract that justifies an award of attorney's fees. The Oregon Supreme Court explained the reasons for treating such an action as an action on a contract, stating as follows:

> [T]he implied warranty of habitability has a dual nature: it establishes not only the standard of workmanship to be employed, but also the expected quality of the finished home — the subject matter of the contract. Where, as here, the injury is one directly contemplated by the contract of sale, *i.e.*, decreased value of premises due to failure to make them habitable, it is the contract that has been breached.

*Cabal v. Donnelly*, 727 P.2d 111, 114 (Or. 1986). *See also Woodward v. Chirco Construction Co.*, 687 P.2d 1269 (Ariz. 1984); *Brickler v. Myers Construction, Inc.*, 966 P.2d 335 (Wash. App. 1998).

In *Wingfield, supra,* this court stated that the implied warranty of habitability "does not rest upon an agreement in fact, as does [an] express warranty, but arises by operation of law and is intended to hold the builder-vendor to a path of fairness." *Wingfield,* 278 Ark. at 179. In their supplemental brief, the Currys argue that because a warranty is "implied in law," breach-of-warranty actions are tantamount to "quasi-contract" actions, for which a party is not entitled to attorney's fees. *See, e.g., Friends of Children, Inc. v. Marcus,* 45 Ark. App. 57, 876 S.W.2d 603 (1994). We disagree.

The warranty of habitability is implied in the contract of sale and arises from that contract. *Wawak, supra; see also Fairchild v. Park,* 90 Cal. App. 4th 919, 109 Cal. Rptr. 2d 442 (2001). As noted above, this court has extended that warranty to subsequent purchasers of the home. *Blagg,* 272 Ark. at 187. Therefore, the Currys' action for breach of the implied warranty of fitness and habitability was an action in contract; because it was an action "in contract," the trial court properly awarded attorney's fees under § 16-22-308.

Affirmed.