AUTOZONE *v.* Wanda HORTON

CA 04-26                                        192 S.W.3d 291

Court of Appeals of Arkansas
Division III
Opinion delivered September 22, 2004

*Rieves, Rubens & Mayton*, by: *Elton A. Rieves III*, for appellant.

*Choate Law Firm, PLLC*, by: *Penny Collins Choate*, for appellee.

SAM BIRD, Judge. Appellee Wanda Horton fell and was injured when she was walking into appellant AutoZone's store in Searcy, Arkansas, on March 28, 2002. Horton later received medical care and underwent surgery related to the injuries sustained in the fall. In a complaint filed against AutoZone, Inc., in the White County Circuit Court, Horton alleged that she was injured after her foot was caught in an unsecured doormat that protruded above the surface of an abutted doormat; and that this caused her to fall to the ground, striking her shoulder and face. AutoZone denied any negligence and stated that it had no knowledge of any abnormal condition of the mats situated in front of its door that could have been "attributable" to a fall. AutoZone alleged that any injuries to Ms. Horton resulted from her own negligence or negligence by a third party.

A jury trial resulted in a verdict in favor of Horton for $31,000, which was entered as the trial court's judgment on October 3, 2003. AutoZone appeals, contending that the trial

court erred: (1) in refusing to grant AutoZone's motions for a directed verdict, made on the basis that there was insufficient evidence of negligence or breach of duty to an invitee; (2) in instructing the jury on circumstantial evidence; and (3) in instructing the jury on general negligence by use of Arkansas Model Instruction—Civil 203.

We agree with the first point on appeal: we hold that the trial court erred in refusing to grant a directed verdict. Because of this holding, we need not address AutoZone's points concerning jury instructions. The case is reversed and dismissed.·

Testimony at the trial was given by Richard Fry and Laura Berry, both former employees of AutoZone, as well as by appellee Horton. Fry testified that he was working at the store when Horton was injured. He testified that he did not see her fall, but that he saw her on the ground and that her foot was under a corner of the mat. He stated that an AutoZone employee straightened the mats, which Fry described as heavy, weighing approximately thirty to forty pounds. Fry testified that he had tripped over the mats more than twice in the six-and-a-half years he had worked for AutoZone, but that he had no knowledge of any customer ever tripping on them. He said that the mats were a potential hazard if not straightened up. He testified that the mats had curled on several occasions when he turned the corner while pushing up to fifteen cases of oil on a dolly or a cart, that he straightened the mats out when this occurred, and that he did not know if every employee did so.

Laura Berry testified that she worked for AutoZone for four years and was working there when Horton was injured. Berry stated that she saw Horton lying on the ground and saw one of her shoes away from her. Berry testified that the shoe was lying under the mat on the other side from Horton, with the top part under the mat; but during her testimony she also read her deposition statement that the shoe was beside Horton and not beneath the mat. Berry described the mats as black, textured, and heavy, probably a good fifteen or twenty pounds. She testified that she had seen them side by side, or end to end, and had never observed them to be overlapped; she stated, however, that she did observe the mats in an overlapping position after Horton tripped. Berry said that the mats did not move at all when she put an item such as a battery on a dolly and rolled the dolly over them, that she did not know if the mats moved for anybody else, and that she was not aware of anyone else ever tripping over them.

Wanda Horton testified that on the day in question she was walking straight into the store, and that the next thing she knew she was on the ground. She stated:

> I was walking down in front of all the vehicles and stuff and everything seemed clear to me. The next thing I knew I fell. I tripped over the mat. When I was walking up to the mat I tripped over it and fell flat.

Horton stated that she was wearing a pair of tennis shoes with open back, closed toe, and thick sole; that she had owned several such pairs; and that she had never experienced problems with them. She said that someone told her that her shoe was under the mat after she fell. She denied that her shoes grabbed the concrete to cause the fall.

Horton testified that she had been in the AutoZone store at least every month or two "since the last twenty years." She said that she always looked at the mats; that once they had been crooked; and that as a general rule they were laid out side by side, "lapped over kindly, because they was too wide to put in front of the door." She testified that she was being careful on the day of her injury when she walked towards the door of the store; that the door mats were flat like they always were; that they were smooth; and that she did not see anything unusual when she was walking. She read aloud her deposition statement that she had seen the mats overlapped as she approached them, and she testified that the mats had been overlapped from time to time. Horton testified that she did not know what caused her to fall. She read the statements in her deposition that she did not know what caused her to fall; that she tripped over the mat and fell; but that, as far as she knew, the mats were in their normal position.

As its first point on appeal, AutoZone contends that the trial court erred in refusing to grant its motions for a directed verdict, made on the basis that there was insufficient evidence of negligence or breach of duty to an invitee. In determining whether a directed verdict should have been granted, the appellate court reviews the evidence in the light most favorable to the party against whom the verdict is sought and gives it its highest probative value, taking into account all reasonable inferences deducible from it. *Curry v. Thornsberry*, 354 Ark. 631, 128 S.W.3d 438 (2003). A motion for directed verdict should be granted only if there is no substantial evidence to support a jury verdict: stated another way, a motion for a directed verdict should be granted only when the

evidence viewed is so insubstantial as to require the jury's verdict for the party to be set aside. *Id.* Where the evidence is such that fair-minded persons might reach different conclusions, a jury question is presented and the directed verdict should be reversed. *Id.* It is not the province of the appellate court to try issues of fact, but simply to examine the record to determine if there is substantial evidence to support the jury verdict. *City of Caddo Valley v. George,* 340 Ark. 203, 9 S.W.3d 481 (2000).

A property owner has a duty to exercise ordinary care to maintain his premises in a reasonably safe condition for the benefit of an invitee. *Kopriva v. Burnett-Croom-Lincoln-Paden,* 70 Ark. App. 131, 15 S.W.3d 361 (2000). Possible causes of a fall, as opposed to probable causes, do not constitute substantial evidence of negligence. *Id.*

In *Van DeVeer v. RTJ, Inc.,* 81 Ark. App. 379, 101 S.W.3d 881(2003), we further addressed the duty of care that a premises owner owes to invitees:

[A]s follows in *Restatement (Second) of Torts,* § 343 (1965):

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

The basis for a premises owner's liability under this rule is the superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know. *Jenkins v. Hestand's Grocery, Inc.,* 320 Ark. 485, 898 S.W.2d 30 (1995). There is an exception to this general rule, which states that a "possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." *Restatement (Second) of Torts,* § 343A(1) (1965).

Arkansas cases have also recognized the general duty that a premises owner owes to an invitee and the exception to this duty where the dangerous condition is either known or obvious to the invitee. *See, e.g., Jenkins v. Hestand's Grocery, supra; Jenkins v. Int'l Paper Co.,* 318 Ark. 663, 887 S.W.2d 300 (1994); *Young v. Paxton,* 316 Ark. 655, 873 S.W.2d 546 (1994); *Carton v. Missouri Pac. R.R. Co.,* 303 Ark. 568, 798 S.W.2d 674 (1990); *Kuykendall v. Newgent,* 255 Ark. 945, 504 S.W.2d 344 (1974); *Ramsey v. American Auto. Ins. Co.,* 234 Ark. 1031, 356 S.W.2d 236 (1962). These rules are the basis of AMI Civ.3d 1104, which states that the premises owner owes a duty to an invitee to use ordinary care to maintain the premises in a reasonably safe condition. No such duty exists, however, if the condition of the premises that creates the danger was known by or obvious to the invitee, unless the premises owner should reasonably anticipate that the invitee would be exposed to the danger despite his knowledge of it or its obvious nature. *Id.*

81 Ark. App. at 384-85, 101 S.W.3d at 883-84 (2003).

The burden of proof is always on the party asserting negligence, as negligence is never presumed. *Morehart v. Dillard Dep't Stores,* 322 Ark. 290, 908 S.W.2d 331 (1995). To establish a prima facie case of negligence, appellant must show that he sustained damages, that the defendants were negligent, and that such negligence was a proximate cause of his damages. *Id.* While a party may establish negligence by direct or circumstantial evidence, he cannot rely upon inferences based on conjecture or speculation. *Id.*

In the present case, AutoZone asserts that it exercised ordinary care in placing mats in front of its door, that there was no evidence that the mats were placed in any way other than a reasonable manner, and that the mere fact that Horton slipped and fell on the mat does not give rise to any inference of negligence. Horton asserts that evidence of AutoZone's employees' prior knowledge of the tripping hazard was direct evidence that Auto-Zone was aware of the hazard and failed to take steps to protect its customers from injury. She also asserts that AutoZone should have known of the dangerous hazard created by its employees when carts or dollies were rolled over the doormats, causing the mats to curl; and that AutoZone should have reasonably anticipated that invitees would be exposed to the danger caused by AutoZone's failure to maintain its premises in a reasonably safe condition. She asserts that it was a jury question as to whether the dangerous condition was open and obvious, as was the question of whether

the invitee should reasonably have been anticipated to encounter the dangerous condition. She concludes that AutoZone breached a duty it owed to her, and that the breach was the proximate cause of her injuries.

■ We do not agree with Horton's arguments. Although a former employee of AutoZone testified that he had tripped on the mat and that it buckled when he rolled a heavy dolly across it, he testified that he straightened the mat each time it buckled. He and another former employee stated that they had not seen anyone trip, and neither of them testified that they had seen the mat buckle when used by other employees. Horton herself testified that she observed the mats to be flat and smooth and that she saw nothing unusual as she approached them.

■ We hold that there was not substantial evidence that AutoZone had knowledge that the mats constituted a "tripping hazard." The evidence presented, viewed in the light most favorable to Horton, showed that her shoe was under the mat after she fell. The jury could only have speculated that any unusual condition of the mats resulted directly from AutoZone's negligence, and that such condition of the mats caused Horton to fall. The evidence does not establish that AutoZone breached any duty of care to Horton. We hold that the trial court erred in denying AutoZone's motions for a directed verdict.

Reversed and dismissed.

CRABTREE and ROAF, JJ., agree.