Hardy LITTLE and Loretta Little *v.*
JONESBORO COUNTRY CLUB

CA 05-179                                                         212 S.W.3d 57

Court of Appeals of Arkansas
Opinion delivered September 7, 2005

*The Rees Law Firm*, by: *David Rees*, for appellants.

*Womack, Landis, Phelps, McNeill, McDaniel*, by: *David Landis, Mark Mayfield*, and *Jared Woodard*, for appellee.

SAM BIRD, Judge. Appellants Hardy and Loretta Little brought a negligence action against appellee Jonesboro Country Club after Mrs. Little was injured while playing golf at the club. The Littles' sole point on appeal is that the trial court erred by

granting the club's motion for summary judgment. Because we find that the evidence in this case presents a genuine issue of material fact, we reverse and remand.

In a complaint filed on May 23, 2003, the Littles claimed that they had participated in a Memorial Day golf tournament at the club on the afternoon of May 29, 2000, and that during this time, Mrs. Little had fallen into an "uncovered and hidden valve hole" located off the sixteenth-hole fairway. According to the complaint, the club maintained and operated an underground irrigation system with valves housed in metal casings. The casings were approximately twenty-three inches deep and eight to ten inches in diameter. The Littles claimed that the valve causing Mrs. Little's injury was not covered at the time she was injured, and that grass had grown over the surface area of the valve hole to the extent that it was completely obstructed from view. The complaint specifically alleged that the club had breached its duty of ordinary care in maintaining the premises by "failing to conduct regular inspections, and thereby failing to discover, secure, and maintain the valve that created this dangerous condition."

On September 24, 2004, the club filed a motion for summary judgment. Mark Huffer, superintendent of the club's golf course, stated in a supporting affidavit that the club had maintained the underground irrigation system since 1983 and that there were approximately 120 valves and 120 valve covers associated with the sprinkler system throughout the golf course. Furthermore, Huffer stated that of the 120 valve covers, no more than fifteen had been replaced or repaired since 1983. He said that during the months preceding Mrs. Little's fall, he never observed or received information regarding a cracked valve cover anywhere on the golf course, including the sixteenth hole. Huffer's affidavit also stated that the club's employees had mowed the rough on the sixteenth hole during the months of April and May 2000; that Huffer would inspect the entire golf course at least twice a week to look for potential hazards; and that Huffer had inspected most of the course on the morning of May 29, 2000. To the best of Huffer's knowledge, the rough along the sixteenth hole was mowed four days before Ms. Little's fall occurred. In addition, two members of the club, Dr. Grover Poole and Les Abernathy, each stated by affidavit that he frequently played golf at the club and had never observed a broken valve cover on the course.

The Littles filed a response to the club's motion for summary judgment, including supporting affidavits and deposition testi-

mony. In his affidavit, Mr. Little stated that, while playing in the tournament on May 29, 2000, he noticed that Mrs. Little had fallen into a hole on the course that was "approximately two feet deep" and was "covered by grass so that it could not be seen by an unsuspecting golfer." He also said that he had played golf at the club for more than twenty years and that he was very familiar with the course; thus, he knew that the valves were supposed to be capped, but "this one was not capped." Frankie Gray, Dick Gray, and Steve Mitchell, who were playing golf with Mrs. Little at the time of her injury, each stated in an affidavit that the hole into which Mrs. Little fell was not visible and that it was covered with grass. Dick Gray also stated that the hole was not capped. In her deposition testimony, Mrs. Little testified that at the time she fell, "the hole was covered and the grass was thick at that time, and it was completely covered." After reviewing the matter, the court granted summary judgment in favor of the club.

On appeal, the Littles argue that the trial court erred in granting summary judgment to the club. Our supreme court has previously set forth the standard of review for cases in which summary judgment has been granted:

> Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the party is entitled to judgment as a matter of law. *Jackson v. City of Blytheville Civ. Serv. Comm'n*, 345 Ark. 56, 43 S.W.3d 748 (2001). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *George v. Jefferson Hosp. Ass'n, Inc.*, 337 Ark. 206, 987 S.W.2d 710 (1999); *Pugh v. Griggs*, 327 Ark. 577, 940 S.W.2d 445 (1997). On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material fact unanswered. *Id.* This court views evidence in a light most favorable to the party against whom the motion was filed, resolving all doubts and inferences against the moving party. *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998). Our review is not limited to the pleadings, as we also focus on the affidavits and other documents filed by the parties. *Wallace v. Broyles*, 331 Ark. 58, 961 S.W.2d 712 (1998); *Angle v. Alexander*, 328 Ark. 714, 945 S.W.2d 933 (1997). After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable persons might reach different conclusions from those undisputed facts. *George,*

*supra. MedMarc Cas. Ins. Co. v. Forest Healthcare*, Inc., 359 Ark. 495, 499, 199 S.W.3d 58, 61 (2004) (quoting *Allen v.Allison*, 356 Ark. 403, 412-13, 155 S.W.3d 682, 689 (2004)).

*Rice v. Tanner*, 363 Ark. 79, 82, 210 S.W.3d 860, 863 (2005).

█ Here, the club had a duty to use ordinary care to protect the Littles because they were invitees. *See Gann v. Parker*, 315 Ark. 107, 865 S.W.2d 282 (1993) (citing *Kay v. Kay*, 306 Ark. 322, 812 S.W.2d 685 (1991)). In *Autozone v. Horton*, 87 Ark. App. 349, 353, 192 S.W.3d 291, 295 (2004), this court specifically explained the duty of care that a premises owner owes to invitees:

> [A]s follows in *Restatement (Second) of Torts*, § 343 (1965):
>
> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> > (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
> >
> > (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
> >
> > (c) fails to exercise reasonable care to protect them against the danger.
>
> The basis for a premises owner's liability under this rule is the superior knowledge of an unreasonable risk of harm of which the invitee, in the exercise of ordinary care, does not or should not know. *Jenkins v. Hestand's Grocery, Inc.*, 320 Ark. 485, 898 S.W.2d 30 (1995).

The initial question is therefore whether the defect is so apparent that, through the use of ordinary care, the possessors should have discovered and corrected it. *Gann, supra*. Ordinary care means that the possessor must protect an invitee from dangers that could have been, or reasonably should have been, foreseen. *Id.*

In the case at bar, there is a genuine issue of material fact as to whether the club, through the use of ordinary care, should have discovered that the valve cover was defective or missing. The

Littles offered evidence to show that the valve hole into which Mrs. Little fell was not visible at the time of her injury, that it was covered by thick grass, and that it was supposed to be capped but was not. On the other hand, the club's golf course superintendent stated that the area was mowed approximately four days before the incident; that the entire course was frequently inspected for potential hazards; that prior to Mrs. Little's fall, he had never received information concerning a cracked valve cover or observed one anywhere on the course; and that he had inspected most of the course on the morning of May 29, 2000. It is also clear from the evidence, however, that the irrigation system had been in place since 1983 and that the valve covers required periodic maintenance and attention. Whether the club's inspection and maintenance procedures were adequate in this case presents an issue of material fact for the trier-of-fact.

The cases cited by the club to support its position are clearly distinguishable from this case. In *Gann, supra,* the court stated that there was no genuine issue of material fact regarding the appellees' lack of negligence in failing to cure a defect inside an appliance or in failing to warn the invitee, a repairman, of the defect. In affirming the trial court's grant of summary judgment to the appellees (possessors of the premises), the court noted that the defect inside the appliance was simply not apparent to them, and that there was no showing that by the use of ordinary care a reasonably prudent possessor would have discovered the defects inside the appliance. *Id.* However, the case at bar presents very different circumstances. Here, the golf course superintendent stated that he routinely inspected the course to check for potential hazards and that he had inspected most of the course on the morning of May 29, 2000. Thus, there is a fact question as to whether the club should have discovered and corrected any problem with the valve cover during routine inspection and maintenance procedures.

In *Jenkins, supra,* the court upheld the trial court's decision to grant summary judgment in favor of the appellee, a grocery store, and held that the store owner owed no duty to warn the appellant of any danger posed by an entrance ramp from the store's parking lot. The court in *Jenkins* clearly distinguished between the duty owed with respect to "dangers that are obvious," such as the entrance ramp, and the duty owed with respect to hidden dangers, such as "traps, snares, or pitfalls." *Id.* The entrance ramp in *Jenkins,* being clearly visible and obvious to the appellant in that case, is

easily distinguishable from the valve hole in this case. Here, there was evidence that the hole was covered in grass and was not visible at all.

Finally, in *McMullen v. New York*, 199 A.D.2d 603, 604 N.Y.S.2d 335 (1993), the claimant sustained injuries after she stepped into a small hole, obscured by grass, on a golf course. However, in that case, the origin of the hole was not known and there was no evidence that the hole was created by any action of the owner of the golf course. *Id.* The court found that the claimant's proof failed to establish that the hole existed for a sufficient length of time prior to the accident to permit the appellant's employees, in the reasonable performance of their duties, to discover and remedy it. *Id.* Here, unlike in *McMullen*, the sprinkler system's valve holes were created by the club, the club was clearly aware of the location of each hole containing a valve, and the club offered proof that it inspected each hole and was aware that each location required routine maintenance. The question of whether the club should have discovered the missing or defective valve cover during its routine inspection and maintenance procedures is one for the factfinder.

For the reasons stated herein, we reverse the trial court's grant of summary judgment in favor of the club and remand for further proceedings.

Reversed and remanded.

HART and CRABTREE, JJ., agree.